Joseph Andrew PRYSTASH, Appellant,

v.

The STATE of Texas.

No. 72572.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 15, 1999.

Jan Morrow, Robert Morrow, Houston, for appellant.

Kimberly Aperauch Stelter, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MANSFIELD, KELLER, and KEASLER, JJ., joined.

The appellant, who had agreed to murder Robert Fratta's wife for remuneration, engaged Howard Guidry to do the shooting. He provided Guidry with a gun, and on November 9, 1994, he transported Guidry to and from Fratta's house where the killing was done. The appellant was convicted of capital murder in July 1996. Penal Code § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Code of Criminal Procedure article 37.071, sections 2(b) and 2(e), the trial judge sentenced the appellant to death. Article 37.071, § 2(g).[1] Direct appeal to this Court is automatic. Article 37.071, § 2(h). The sufficiency of the evidence is not challenged. The appellant raises seventeen points of error and a "point for review." We shall affirm.

## I. Voir Dire

■ In point of error number **seventeen**, the appellant complains that the trial court erroneously denied a challenge for cause against Venire Member William Brittain. The appellant claims that Mr. Brittain was biased against a phase of the law in violation of article 35.16(c)(2). He argues that Mr. Brittain refused to acknowledge that the society in the future dangerousness special issue[2] includes prison society. A close reading of the voir dire transcript, with the relevant parts underscored, reveals that Mr. Brittain understood that the appellant might be less of a threat while in prison.

Q: You have a forty-year-old man gets a life sentence. You know Judge is telling you that he's going to do 40 years minimum. So, now he's eighty years old. You think, I don't really want him out as my neighbor. I think he might

be a threat to me out here. But if he's in the penitentiary for the next forty years, he may not be a threat in that society in there?

A: *Right.*

Q: So, I might answer the question one way for a 17–year–old kid. And I might answer it the opposite way for a guy when he's 40 when he goes in. See that way of thinking?

A: *Yes.*

Q: Does that make sense to you?

A: *It makes sense.*

From this portion of the voir dire, it is clear that the venire member understood the prison versus free-world dichotomy that the appellant complains the venire member refused to consider. However, the voir dire questions that the appellant was asking involved more than the distinction between prison society and civilian society. His inquiry also included the idea that the advanced age of the prisoner would lessen his future dangerousness after release.

Q: Would you be willing to consider that here's my 20 minute question. When you look at society would you be willing to consider the age of the person and the length of sentence when you're deciding if somebody is a threat to society or not?

A: No, *not on the age* if they've committed it.

Q: And tell me why you wouldn't?

A: Why I wouldn't?

Q: Right.

A: I think that they should have thought about that before they committed the crime. I wouldn't worry *about the age.*

Q: Okay. And that's what you're deciding in the first phase, guilty or not guilty?

---

1. Unless otherwise indicated all future references to Articles refer to the Code of Criminal Procedure.

2. "[W]hether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Article 37.071, § 2(b)(1).

A: Right.

Q: But now I'm talking about in the context of the first special issue. And you are trying to decide whether that person is a threat to society. What would you want to know about when you look at whether they are a threat or not to society.

A: Their background, you know. If they committed crimes or things before.

Q: Okay. And what are you thinking about when you think about society? What, were you analyzing that threat?

A: Just want him on the street or not.

Q: Exactly. He ain't going to be on the street.

A: Right.

This part of the voir dire shows that the venire member understood that some offenders may be older than others when they go to prison, but that he refused to acknowledge the age of the offender to be relevant to an assessment of guilt. It does not reflect that he had discarded the prison versus free-world dichotomy. When the defense counsel focused the venire member's attention onto the punishment issues, he maintained that he would not consider age in deciding future dangerousness.

Q: So, that's what, the point I'm trying to get across to you. And I know it's a new concept and I appreciate you working through it with me. But he's not coming back on the street for 40 calendar years minimum. So, it wouldn't be fair, would it, for you to answer that first special issue thinking he's going to get out tomorrow that he may be a threat but wouldn't be in the penitentiary? See what I'm saying?

A: *I see what you are saying.*

Q: Would you be willing to consider society to include the penitentiary in this context?

A: No, I still have to listen to the case, you know.

Q: Right.

A: To me, *age doesn't make the difference.*

Q: You would not be willing to consider it in answering the first special issue?

A: No.

The venire member repeated that he understood the dichotomy the defense had presented, but he rejected the notion that the age of the offender when he went into prison would be relevant. When he answered the question of whether he would be willing to consider society to include the penitentiary, he simply reserved the right to make his determination of future dangerousness based on the particularized facts with which he would be presented. Considering the entirety of his testimony on the topic, it seems clear that he understood that society included prison, but that he refused to consider the age of an offender when determining future dangerousness.

A juror is not challengeable for cause because he refuses to give mitigating effect to particular evidence. *Morrow v. State*, 910 S.W.2d 471, 473 (Tex.Cr.App. 1995), *cert. denied*, 517 U.S. 1192, 116 S.Ct. 1683, 134 L.Ed.2d 784 (1996). In *Soria v. State*, 933 S.W.2d 46, 65–66 (Tex.Cr.App. 1996), *cert. denied*, 520 U.S. 1253, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997), we held that although a juror in a capital case "would give no weight to age in considering punishment [that] does not subject him to a challenge for cause." *Id.* at 66; *see also Massey v. State*, 933 S.W.2d 141, 150 (Tex. Cr.App.1996) (holding that venire members were not challengeable for cause based on a refusal to consider age as mitigating evidence in capital case). Point of error number seventeen is overruled.

## II. Guilt Phase

In a **"point for review,"** the appellant asks us to review employment records of a witness, which the trial court sealed after inspecting them *in camera*. The witness was a sheriff's deputy who participated in the custodial interrogation that led to the

appellant's written statement. The appellant subpoenaed the records because he thought they would contain favorable evidence about the witness's "interrogation practices." The trial court, finding no evidence favorable to the appellant, ruled that the records would not be given to him. We have examined the records, and we find that the trial court did not abuse its discretion in denying the appellant access to them.

### III. Punishment Phase Testimony

■ In the appellant's **third** point of error, he argues that the trial court erred by excluding from the jury during the punishment phase of his trial the prosecutor's plea offer of 55 years. He argues that a plea offer of 55 years, as opposed to an offer of life, is mitigating evidence relevant to the jury's determination of special issue number two in that it reflects that the prosecutor did not believe the appellant to be a continuing danger to society. The State counters that the plea offer was solely motivated by the State's desire for evidence against the appellant's co-defendants, and the offer did not reflect the prosecutor's evaluation of the appellant's death-worthiness.

■ The trial judge excluded the evidence without reference to any particular rule of evidence, nor did he require the prosecutor to state the specific grounds for the State's objection to the introduction of this evidence. The trial judge excluded the evidence because he was concerned that if the plea agreement was made public, it might affect the trial of the appellant's co-defendant. Concern for the impact on a subsequent trial should be dealt

with in that case through the voir dire of prospective jurors, see *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Adami v. State*, 524 S.W.2d 693, 704 (Tex.Cr.App.1975), a continuance, see *Hernandez v. State*, 643 S.W.2d 397, 399 (Tex.Cr.App.1983), *cert. denied*, 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983), or a venue change, see, e.g., *Brimage v. Texas*, 918 S.W.2d 466, 508 (Tex.Cr.App.1996).

■ However, if the trial court's decision was correct on any theory of law applicable to the case, we will sustain it. *McFarland v. State*, 845 S.W.2d 824, 846 n. 15 (Tex.Cr.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). This is true even if the trial judge failed to give any reason or used the wrong reason for the ruling. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Cr.App. 1990). Our standard of review for evidentiary decisions by the trial judge is the abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex.Cr. App.1990); *Marras v. State*, 741 S.W.2d 395, 404 (Tex.Cr.App.1987).

In *Smith v. State*, 898 S.W.2d 838 (Tex. Cr.App.), *cert. denied*, 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995), this Court upheld the trial court's exclusion of the State's plea bargain offer of life imprisonment. The State had argued in *Smith* that the excluded evidence of the plea bargain was inadmissible under Rule 408.[3] After ruling that Rule 408 is inapplicable to plea offers, we evaluated the trial court's decision under Rule 403. *Id.* at 843. We admitted that the plea bargain "may be *minimally* relevant to a State

---

3. "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evi-

dence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for anther purpose, such as proving bias or prejudice or interest of a witness or a party, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Tex.R. Evid. 408.

District Attorney's office belief that the defendant was not a future danger." *Id.* at 844. However, we found that the probative value of such evidence is substantially outweighed by the danger of both unfair prejudice and of misleading the jury. *Id.* at 843–44; Tex.R. Evid. 403. The multitude of motivations that a prosecutor may have in offering a life sentence in a capital case dilute the probative value of that offer and may mislead the jury as to the true motivations of the prosecutor. *See id.* at 844.

We also identified a policy rationale for excluding plea offers by the government. Public policy favors the conclusion of litigation by compromise and settlement, both in criminal and civil cases, and allowing a criminal defendant to introduce evidence about a sentence offered by the State during plea negotiations clearly militates against this policy. *See generally id.* at 844 n. 6. If evidence of plea bargain offers were admissible, "the State would be ably discouraged from making such offers in the future, and plea bargaining is essential to the administration of justice in America." *Id.* The decision to admit or exclude this evidence was soundly within the discretion of the trial judge. We cannot say that the trial court abused its discretion in excluding this evidence. The appellant's third point of error is overruled.

■ In point of error number **four**, the appellant complains that the trial court excluded part of the testimony of Dr. Walter Quijano from the jury during sentencing. The proposed testimony of Dr. Quijano would have been that he would not consider the appellant to be a continuing threat while in prison. Dr. Quijano based his opinion on the appellant's current jail classification as nonviolent, the offense with which the appellant was charged, and the level of resources that the prison system possesses to control the danger of inmates. This testimony would have been used to convince the jury that under the special issue the appellant was not a con-

tinuing threat posing a future danger to society.

The trial court ruled that Dr. Quijano might talk about the prison system classification and level of resources, but he might not speculate how the classification might apply to the appellant. The trial judge also ruled that Dr. Quijano could not mention the appellant's current jail classification, but he could state that he had reviewed the jail records of the appellant in forming his opinion. The appellant made a timely objection when the trial judge restricted the testimony, and the issue was properly preserved for appeal. The appellant argues that these restrictions on the testimony of Dr. Quijano were an abuse of discretion by the trial judge. We will uphold evidentiary rulings on appeal if the trial court's decision was correct on any theory of law applicable to the case. *See McFarland,* 845 S.W.2d at 846 n. 15.

The trial court prohibited Dr. Quijano from hypothesizing as to the application of the prison classification system to the appellant. However, Dr. Quijano stated that he was unable to predict the classification that the prison system would assign to the appellant. The testimony of Dr. Quijano concerning the prison classification system was not particularized to the appellant, and Dr. Quijano did not establish that the current jail classification would dictate his classification in prison. Therefore, this restriction on the testimony of Dr. Quijano cannot have prevented Dr. Quijano from testifying that he did not consider the appellant to be a continuing threat to society. The appellant cannot complain about the restriction of the trial court on the application of the prison classification system to the appellant because Dr. Quijano had no opinion as to that application.

■ The other restriction on the testimony of Dr. Quijano was that the trial court prohibited Dr. Quijano from testifying as to the current jail classification of the appellant. The jail classification of the appellant as nonviolent was inadmissable hearsay. The jailer's opinion of the dan-

gerousness of the appellant was hearsay because it was a statement not made by Dr. Quijano that would have been offered to prove the truth of the matter asserted, that the defendant was not dangerous. However, the opinion of an expert witness may be informed by the opinion of others. Dr. Quijano was properly permitted to state that he had reviewed the jail classification as a basis for his expert testimony, but the classification itself remained inadmissable. *See* Tex.R. Evid. 703, 705(a).[4] The trial court did not abuse his discretion in excluding the hearsay underlying the opinion of Dr. Quijano.

The appellant argues that Dr. Quijano was prohibited from stating his opinion that the appellant would not pose a continuing threat because the trial court excluded the underlying bases for his opinion. As we have said, the trial court was within its discretion in excluding the jail classification of the appellant. Never did the trial court prevent Dr. Quijano from stating his opinion of the continuing threat posed by the appellant. The notion that Dr. Quijano was unable to testify that he thought the appellant did not pose a continuing threat without also stating the current jail classification is without merit, because the trial court permitted Dr. Quijano to state that he had reviewed the jail rec-

ords. Dr. Quijano testified that the prison system had sufficient resources to control the dangerousness of the inmates. Dr. Quijano was free to elaborate as to the threat posed by the appellant, but the appellant never inquired beyond this general question. The trial court never prevented defense counsel from asking Dr. Quijano if he thought that the appellant posed a continuing threat. Since we find no reversible error, point of error number four is overruled.

## IV. Punishment Phase Instructions

Although the evidence showed that Howard Guidry engaged in the conduct of murder, the court's charge at the guilt stage of the trial authorized the jury to find the appellant criminally responsible for Guidry's conduct as a party.[5] In such cases, article 37.071, section 2(b)(2) requires that at the punishment stage "the court shall submit the following issue[ ] to the jury: ... whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken."[6]

Before trial the appellant moved the court to hold the issue unconstitutional. Counsel said, "Judge, the defendant's posi-

---

4. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible into evidence." Tex.R. Evid. 703. "The expert may testify in terms of opinion or inference and give his reasons therefore without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data, subject to subparagraphs (b) through (d)." TEX.R. EVID. 705(A).

5. *See* TEX. PENAL CODE §§ 7.01 ("Parties to Offenses"), 7.02 ("Criminal Responsibility for Conduct of Another"), and 7.03 ("Defenses Excluded").

6. The issue was added to the article by the Act of June 16, 1991, 72d Leg., R.S., ch.838, § 1, 1991 Tex. Gen. Laws 2898, 2899. *Compare Enmund v. Florida,* 458 U.S. 782, 797, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (Eighth Amendment does not permit imposition of the death penalty on "one who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed"), *with Tison v. Arizona,* 481 U.S. 137, 152, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) (Eighth Amendment does not prohibit the death penalty in the case of "the defendant whose participation is major and whose mental state is one of reckless indifference to the value of human life").

tion is that we would waive that [issue], if at all possible. We consider Special Issue No. 2 to be unconstitutional and on those grounds as previously stated to the Court, we don't want that question." Although the court did not agree that the issue was unconstitutional, it did agree to omit the issue from the jury charge and to forbid the State from asking the prospective jurors about it in voir dire examination.

■ Now in points of error **one and two** the appellant argues that the trial court erred in failing to submit the issue in the jury charge and in accepting the verdict without an answer to the issue. He relies on *Powell v. State*, 897 S.W.2d 307 (Tex.Cr.App.1994).

In *Powell* we considered a capital case which had been retried after a reversal on appeal. During the pendency of that appeal, an amendment of article 37.071 had changed the requirements for the court's charge at the punishment stage. The amendment deleted a requirement that the charge include an issue on "deliberateness," [7] substituting an issue for cases that were tried on the law of parties.[8] The amendment did not require any change of the charge in Powell's trial because he committed his offense before the effective date of the amending act, which had a savings clause that continued in effect the former law.[9] Nevertheless Powell requested that the trial court submit the new issue rather than the former one, and the

court did so. We held that this was a reversible error.

The *Powell* analysis was done in terms of preservation of error. It began with *Marin v. State*, 851 S.W.2d 275 (Tex.Cr. App.1993), in which we set out the basic concept that in preserving error for appellate review there are three classes of rules: forfeitable rights which require that a party request the court to act, waivable rights which must be implemented unless affirmatively waived by the party, and absolute requirements which cannot be waived or forfeited. *Powell*, 897 S.W.2d at 316. The Court found that Powell's "case is analogous to those cases addressing the waiver of statutorily required sentences and sentencing procedures." *Ibid.*[10] The analysis ended thus (*id.* at 317):

> We cannot allow trial courts and criminal defendants to mutually consent to usurp the powers of the legislature. Thus, we must affirm the principle of absolute requirements and prohibitions which are not optional, waivable, or forfeitable, stating that neither a capital murder defendant nor a trial court may ignore the statutory scheme mandated by the effective dates of Article 37.071. The effective dates of statutes are absolute requirements, non waivable and nonforfeitable; criminal defendants may not in Texas legislate the law to be applied in their case.[11]

7. "[W]hether the conduct of the defendant that caused the death of the defendant was committed deliberately and with the reasonable expectation that the death of the deceased or another would result." Act of June 14, 1973, 65th Leg., R.S., ch. 426, art. 1, § 1, 1973 Tex. Gen. Laws 1122, 1125, *repealed by* Act of June 16, 1991, 72d Leg., R.S., ch.838, § 1, 1991 Tex. Gen. Laws 2898, 2899.

8. See n. 6 and accompanying text, *supra.*

9. See Act of June 16, 1991, 72d Leg., R.S., ch.838, § 5, 1991 Tex. Gen. Laws 2898, 2901.

10. The principal case that the Court found analogous, *Ex parte Sims*, 868 S.W.2d 803 (Tex.Cr.App.1993), held that a statutorily required sentencing procedure was an absolute

requirement which was not waivable. That holding has since been overruled as incorrect. *See Ex parte McJunkins*, 954 S.W.2d 39 (Tex. Cr.App.1997). Because we resolve the points before us with the doctrine of invited error, we shall not further address the particular question of whether parties may waive the statutory requirements for jury charges or the general question of why a statutory requirement may be said to be absolute.

11. This focus on effective dates of statutes and usurpation of legislative power introduced "a subtle but significant distortion of the true issue." *Powell v. State*, 897 S.W.2d at 318 (Clinton, J., concurring). Although the issue that Powell asked to be submitted was taken from a subsequent act of the legislature, that

The analysis of the question in terms of the rules for waiver ignores the crucial distinction between those rules and the law of invited error. The question was not whether Powell could waive a right, it was whether he could complain of an action he requested; this is more than, and different from, waiver.

> Waiver might usefully be distinguished from what is sometimes called "invited error." If a party affirmatively seeks action by the trial court, that party cannot later contend that the action was error. This is not really a waiver of error previously committed. Rather, it is part of the definition of what can constitute error, and quite reasonably defines error of which a party may complain as excluding those actions of the trial court actually sought by the party in that tribunal.

George E. Dix and Robert O. Dawson, 43 *Texas Practice—Criminal Practice and Procedure* § 42.141 (Supp.1999) (footnote omitted).

The doctrine of invited error is properly thought of, not as a species of waiver, but as estoppel. This Court first pointed out the relationship between the doctrines of estoppel and invited error in jury charges in *Carbough v. State*, 49 Tex.Crim. 452, 455–56, 93 S.W. 738 (1906):

> In the later case of *M., K. & T. Ry. v. Eyer et al.*, [96 Tex. 72, 74–75, 70 S.W. 529, 529–30 (1902),] *supra*, the question again came under review before the Supreme Court. Speaking of invited error, Chief Justice Gaines, delivering the opinion of the court, said: "The rule in question is but a deduction from the doctrine of estoppel. Where a party by a request for a ruling leads the court into error, he should be precluded from claiming a reversal of the judgment by reason of the error so committed. To hold otherwise would be to permit him to take advantage of his own wrong. Where the court, upon the trial is requested to affirm a proposition of law in the charge, and it is so affirmed the rule applies. Such was the case of *Railroad Co. v. Sein*, 89 Tex. 63, 33 S.W. 215, 216." This is the last enunciation of this doctrine that has been called to our attention at the hands of the Supreme Court. Numerous decisions have been cited *supra*, from this and the Courts of Civil Appeals of this state, affirming the doctrine laid down by these decisions. If the rule is correct, and it seems the authorities cited settle it, it is not reversible error that there may be some omission or some defect in the requested charge given, and the authorities seem to place it upon the ground that the party complaining is estopped, and by asking the special charge, whether given or refused, affirms the proposition laid down by the court in the charge given.

■ Just as the law of entrapment estops the State from making an offense of conduct that it induced, the law of invited error estops a party from making an appellate error of an action it induced.

■ The rule of invited error in jury charges is one of long standing, and it applies to the improper submission of jury charges at the punishment stage of a capital trial.[12] The rejection of it in *Powell* was not justified by the analysis which asked whether a statutory requirement could be waived.

The *Powell* Court gave another reason for reversal.[13] It said that a waiver of trial

was irrelevant to the decision of the case. The true question was the omission of the issue that was required by the applicable statute. The result and the reasons for it would have been the same if Powell had requested that an issue of his own creation, or no issue at all, be substituted.

12. *Livingston v. State*, 739 S.W.2d 311, 341 (Tex.Cr.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

13. The bare majority of five judges in *Powell* did not speak with one voice. Judges Clinton and Maloney filed concurring opinions which said they "joined" Judge Meyers' opinion, but

by jury, which is forbidden in a capital case in which the State sought the death penalty,[14] occurred when the verdict did not include a special issue which was required by the applicable statute. There are several fatal flaws in this reasoning. To begin with, if this were an improper waiver, the doctrine of invited error estops the appellant from complaining of it. Second, it is untrue on its face; the case was tried to a jury. The worst that can be said is that the jury returned a verdict which did not answer one issue. Third, if an omission of a punishment issue amounted to waiver of trial by jury, then any omission of an element from the jury charge at the guilt stage of any criminal case would amount to a waiver of trial by jury on guilt. Just as a statute requires a jury verdict on the punishment issues in a capital trial, the United States Constitution requires a jury verdict on each element of the offense at the guilt stage of every criminal trial. *See Richardson v. United States*, 526 U.S. 813, ——, 119 S.Ct. 1707, 1711, 143 L.Ed.2d 985, 994 (1999). But we do not treat omissions of the elements of offenses as waivers.[15] *See Almanza v. State*, 686 S.W.2d 157, 172–74 (Tex.Cr.App. 1984) (holding that the omission of an element from the authorization paragraph in a non-capital case is error subject to a harm analysis in which the appellate court reviews the entire jury charge and the state of the evidence in the case to decide whether the error requires reversal). They are subject to the normal requirements for preservation of error. And the same should be true for the punishment issues in a capital case.

We should not have permitted Powell to raise as error an action that he procured. Insofar as we did so, our decision in *Powell*

*v. State*, 897 S.W.2d 307, 314–19 (Tex.Cr. App.1994), is overruled.

Just as we should not have permitted Powell to complain of the trial court's submitting a jury charge as he requested, we will not permit this appellant to complain of the trial court's deleting a jury charge as he requested. The appellant's first and second points of error in this case are overruled under the doctrine of invited error.

■■■■ In point of error number **nine**, the appellant asserts that the refusal of the trial court to instruct the jury that a life sentence would be imposed if they failed to answer a special issue is reversible error. There is no constitutional prohibition to concealing from the jurors the consequences of their deliberations, so long as they are not misled into believing that ultimate responsibility for the verdict rests elsewhere. *McFarland v. State*, 928 S.W.2d 482, 519 (Tex.Cr.App.1996); *Draughon v. State*, 831 S.W.2d 331, 338 (Tex.Cr. App.1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993). "The jury is not informed of the consequences of a hung jury, but each juror will know that without his or her vote the death sentence cannot be imposed." *Lawton v. State*, 913 S.W.2d 542, 559 (Tex.Cr.App.1995) *cert. denied*, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). Point of error number nine is overruled.

■■■ The appellant complains in point of error number **ten** that the trial judge erroneously refused to instruct the jury that they could not consider unadjudicated offenses during the punishment phase unless the prosecution had proven them beyond a reasonable doubt. The charge to the jury stated that the State was required

---

which did not embrace its central holding. Judge Clinton said that the issue of whether an absolute requirement could be waived was "a subtle but significant distortion of the true issue," which he identified as waiver of the right to trial by jury. *Powell v. State*, 897 S.W.2d at 318. Judge Maloney identified that issue as well. *See id.* at 319. Judge Meyers'

opinion adopted their reasoning in a footnote. *See id.* at 317 n. 6.

**14.** *See* Tex.Code Crim. Proc. article 1.14(a).

**15.** Nor do the federal courts. *See Neder v. United States*, 527 U.S. ——, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

to prove each of the special issues beyond a reasonable doubt. The charge to the jury adequately protected the appellant because the charge comprehends the burden of proof that the State bears for the entirety of evidence introduced during the punishment phase. We have consistently held that it is not error for the trial judge to refuse to give a separate instruction concerning unadjudicated offenses when the State is required to prove the punishment issues beyond a reasonable doubt. *Burks v. State,* 876 S.W.2d 877, 911 (Tex. Cr.App.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *Coble v. State,* 871 S.W.2d 192, 208 (Tex. Cr.App.1993), *cert. denied,* 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994); *Lewis v. State,* 815 S.W.2d 560, 567 (Tex.Cr. App.1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992); *Santana v. State,* 714 S.W.2d 1, 11–12 (Tex.Cr. App.1986).

The appellant argues that our decision in *Mitchell v. State,* 931 S.W.2d 950 (Tex. Cr.App.1996), amends this line of decisions. *Mitchell* held that in a noncapital case, a defendant is entitled to a limiting instruction that informs the jury that unadjudicated offenses offered during the punishment phase must be proven beyond a reasonable doubt. *Id.* at 954. However, *Mitchell* does not take into account the instruction in a capital case that the State must prove the special issues beyond a reasonable doubt. *Mitchell,* therefore, is inapplicable to the capital sentencing structure, and the appellant's point of error is overruled.

■ In point of error number **eleven**, the appellant argues that the trial court erred in refusing to give an instruction to the jury that limited their consideration of other bad acts to the future dangerousness special issue. In point of error number **twelve**, the appellant argues that the trial court erred in refusing a limiting instruction that the jury disregard evidence of the commission of the primary offense in deciding whether he had committed the other bad acts. The other bad acts to which the appellant refers are an aggravated robbery of a car salesperson, a dismissed charge of attempted murder of his brother-in-law, and the burglary of the victim's home and assault on the victim before the instant murder.

■ The trial court refused to limit the jury's consideration of the appellant's other bad acts to the future dangerousness special issue. Because the other bad acts of the appellant were also relevant to the mitigation special issue, which was the only other special issue before the jury at punishment, the trial court did not err in refusing to give the limiting instruction. A "limiting instruction is not required where evidence can be considered on any relevant issue in the case." *Lane v. State,* 822 S.W.2d 35, 40 (Tex.Cr.App.1991) (upholding the refusal to give a limiting instruction that would have restricted the jury's consideration of other bad acts to the future dangerousness special issue because the other bad acts were arguably relevant to the deliberateness special issue). Appellant's eleventh point of error is overruled.

■ When evidence is offered and admitted for a limited purpose, the party who opposes admission of that evidence bears the burden to request a limiting instruction. *Garcia v. State,* 887 S.W.2d 862, 878 (Tex.Crim.App.1994), *cert. denied,* 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). The appellant made a general objection when the State introduced the evidence that presumed to restate any objections made at trial, but he did not object to the introduction of the primary offense and did not request any limiting instructions. The failure of the appellant to object to the introduction of the primary offense at punishment or to request a limiting instruction when the evidence was offered forfeited any error on that issue. The appellant's twelfth point of error is overruled.

■■■■ The appellant argues in his **thirteenth** point of error that the trial court erred in refusing to submit special-verdict forms to the jury that would specify whether they had found each of the unadjudicated offenses to have been committed. The appellant claims that this Court cannot perform a meaningful sufficiency review of the jury's answer to the future dangerousness special issue without answers to the requested special-verdict forms. Setting aside that the appellant has not challenged the sufficiency of the jury's answer to the future dangerousness special issue, we observe that there is no requirement that the State prove all of the elements of unadjudicated offenses submitted at the punishment phase before the trial court can admit the evidence. *See Spence v. State*, 795 S.W.2d 743, 758–59 (Tex.Cr.App.1990), *cert. denied*, 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991). In *Matchett v. State*, 941 S.W.2d 922 (Tex.Cr.App.1996), *cert. denied*, 521 U.S. 1107, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997), we held that the lack of this requirement meant that the trial court is under no obligation to submit to the jury special-verdict forms listing the elements of unadjudicated offenses alleged by the State at punishment. *See id.* at 937. Nor do we think that the future dangerousness special issue necessitates special-verdict forms as to the commission of unadjudicated offenses alleged at punishment. Point of error thirteen is overruled.

■■■■ In point of error number **fourteen,** the appellant complains that the trial court erroneously refused his request that the jury be charged that they may consider any evidence to be mitigating even if irrelevant to the moral culpability of the defendant. He claims that his requested charge was necessary to correct the definition of mitigating evidence in article 37.071, section 2(f)(4), which unconstitutionally limits the definition of mitigating evidence to evidence that reduces the appellant's moral blameworthiness. Faced with a similar challenge in *Cantu v. State*, 939 S.W.2d 627, 648 (Tex.Cr.App.), *cert. denied*, —— U.S. ——, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997), we held that article 37.071, section 2(e) solves any potential narrowing problem in section 2(f)(4). Article 37.071, section 2(e) instructs the trial court to charge the jury that they must "take into consideration *'all* of the evidence, *including* the circumstances of the offense, the defendant's character and background, *and* the personal moral culpability of the defendant' in determining whether sufficient mitigating circumstances exist to warrant a life sentence" *Cantu*, 939 S.W.2d at 648–49 (emphasis added in *Cantu*). Although mitigating evidence is statutorily defined as that evidence which "a juror might regard as reducing a defendant's moral blameworthiness," article 37.071, section 2(f)(4), the trial court's instructions pursuant to section 2(e) provide the jury with a vehicle to respond to a broader range of mitigating evidence. *See Cantu*, 939 S.W.2d at 648–49; *Lawton*, 913 S.W.2d at 555–56; *Goff v. State*, 931 S.W.2d 537, 556 (Tex.Cr.App. 1996), *cert. denied*, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).

■■■■ However, "in order for mitigating evidence to have relevance beyond the scope of the special issues, there must be relevance between the mitigating evidence and the circumstances surrounding the crime that tends to excuse or explain the criminal act, so as to make that particular defendant less deathworthy." *Goff*, 931 S.W.2d at 556. Although article 37.071, section 2(e) allows the consideration of background and character evidence in addition to the personal moral culpability of the defendant, section 2(e) does not necessarily permit the introduction of any evidence that the defense believes may sway a jury to render a life verdict. We have held that evidence that relies on mere sympathy or emotional response is irrelevant to the jury's consideration of the deathworthiness of the defendant. *See Rhoades v. State*, 934 S.W.2d 113, 126 (Tex.Cr.App.1996) (ruling that photo-

graphs of the defendant which depict a cheerful early childhood are irrelevant because such evidence has no relationship to his conduct); *Goff,* 931 S.W.2d at 555–56 (ruling that the homosexuality of the victim, if unknown to the defendant and unrelated to the crime, is irrelevant to the jury's ability to consider and give mitigaing effect to the background or character of the defendant); *accord McFarland,* 928 S.W.2d at 522 (upholding an anti-sympathy charge as properly focusing the attention of the jury on those factors relating to a moral inquiry into the culpability of the defendant).

The instruction that the appellant requested attempted to change the statutory balance between the definition of mitigating evidence in section 2(f)(4) and the broader evaluation of the deathworthiness of the defendant in section 2(e). The wording of the instruction that the trial court denied would have provided an alternate definition of mitigating evidence, which we have previously held is "contrary to the law." *Skinner v. State,* 956 S.W.2d 532, 542 (Tex.Cr.App.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998). The jury in the appellant's case was instructed that a mitigating circumstance may include, but is not limited to, any aspect of a defendant's character, background, record, emotional instability, intelligence or circumstances of the crime which could make a death sentence inappropriate. The appellant does not complain of any evidence to which the jury could not give effect; therefore, "even if the statute is deficient in the way that he suggests, he did not suffer the deficiency." *McFarland,* 928 S.W.2d at 518. The appellant's fourteenth point of error is overruled.

#### V. Special Issues Challenges

██ In the appellant's **fifth through seventh** points of error, he claims that the mitigation issue at punishment, article 37.071, section (2)(e), violates the Eighth Amendment of the United States Constitu-

tion. In his **fifth** point of error, the appellant contends that the mitigation issue unconstitutionally omits a burden of proof. We have held that because there are no constitutional limits on the jury's discretion to consider mitigating evidence, the constitution does not require a burden of proof. *Anderson v. State,* 932 S.W.2d 502, 508 (Tex.Cr.App.1996) *cert. denied,* 521 U.S. 1122, 117 S.Ct. 2517, 138 L.Ed.2d 1019 (1997). The appellant acknowledges the case law against him, but presents an argument that he claims this court has overlooked in previous decisions. The appellant argues that the mitigation special issue permits the introduction of nonstatutory aggravating evidence in addition to mitigating evidence, and this nonstatutory aggravating evidence is not subject to a burden of proof in violation of *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). The nonstatutory evidence of which the appellant primarily complains is the introduction of victim impact evidence.

However, the appellant's reliance on *Walton* is misplaced. *Walton* ruled that the allocation of the burden of proof as to mitigating factors cannot remove the burden of proof that the State must bear in proving elements of the crime or statutory aggravators. *Walton,* 497 U.S. at 650, 110 S.Ct. 3047. The lack of a burden of proof in the mitigation special issue does not lessen the State's burden to prove the elements of capital murder, which include the statutory aggravators. The jury does not decide the mitigation special issue until after the State has proven the elements of capital murder and that the defendant is a future danger, article 37.071, section 2(b)(1); therefore the concerns of *Walton* are not implicated. The relevance of victim impact evidence to mitigation evidence was countenanced by the United States Supreme Court in *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), *accord Ford v. State* 919 S.W.2d 107, 115–16 (Tex.Cr.App.1996).

In *Payne,* the Supreme Court explained "that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." *Payne,* 501 U.S. at 825, 111 S.Ct. 2597. The thrust of *Payne* is that victim impact evidence is relevant to counteract "the mitigating evidence which the defendant is entitled to put in," *id.,* that is, victim impact evidence is relevant to the normative decision of the jury under section 2(e). Victim impact evidence is not subject to a burden of proof because it is relevant to the mitigation special issue instead of to a statutory aggravator found in the definitions of capital murder. The appellant's fifth point of error is overruled.

■ In the appellant's **sixth** point of error, he claims that the mitigation special issue is unconstitutional because it fails to provide meaningful appellate review of the jury's decision. We previously have ruled that the normative decision of the jury as to the mitigation special issue is not amenable to appellate review. *See McFarland,* 928 S.W.2d at 498–99; *Morris v. State,* 940 S.W.2d 610, 614 (Tex.Cr.App. 1996). Point of error number six is overruled.

■ In the appellant's **seventh** point of error, he argues that article 44.251(a) requires that the mitigation special issue be subject to appellate review. We have ruled before that article 44.251(a) does not require us to undertake a sufficiency review of the jury answers to the special issues. *See Eldridge v. State,* 940 S.W.2d 646, 652–53 (Tex.Cr.App.1996); *McFarland,* 928 S.W.2d at 498–99. "Our inability to effectuate Article 44.251 in relation to the second special issue does not, however, make Article 37.071 § (2)(e) constitutionally infirm. We conduct legal sufficiency reviews of a guilty verdict and of the first special issue. We do not think that the Constitution requires any further appellate review of Article 37.071 § 2(e)." *Eldridge,*

940 S.W.2d at 653. The appellant's seventh point of error is overruled.

■ In point of error number **eight,** the appellant argues that requiring ten votes for the jury to return a negative answer to the first special issue and an affirmative answer to the third special issue violates the Eighth Amendment. The appellant complains that the majority of the jury could improperly pressure an individual juror who wants to vote for life to instead vote for death. This court has consistently upheld as constitutional the instructions in article 37.071, sections 2(d) and 2(f), known as the "10–12" rule. *See McFarland,* 928 S.W.2d at 519; *Lawton,* 913 S.W.2d at 558–59; *Nobles v. State,* 843 S.W.2d 503, 509–10 (Tex.Cr.App.1992). The instructions on answering the special issues do not mislead the jury into thinking that an affirmative answer should be given unless ten or more jurors agree to give a negative one. *Draughon,* 831 S.W.2d at 337–38; *McFarland,* 928 S.W.2d at 519; *Lawton,* 913 S.W.2d at 559. Any juror who wishes to vote life contrary to the votes of the majority is "given an avenue to accommodate the complained-of potential disagreements," *McFarland,* 928 S.W.2d at 519; *see also Lawton,* 913 S.W.2d at 558–59, for "every juror knows that capital punishment cannot be imposed without the unanimous agreement of the jury on all three special issues." *Lawton,* 913 S.W.2d at 559.

The frequency of attack on the constitutionality of the "10–12" rule leads us to discuss the merits of the procedure. In *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), the United States Supreme Court held that a prosecutor may not mislead the jury into thinking that the responsibility for imposing the death penalty lay not with the jury but with the appellate courts who review the case. *Id.* at 341. The Supreme Court reasoned that the jury might improperly "delegate" its decision whether to impose the death penalty to the appellate courts.

*Id.* at 331–33. One of the underlying values of the *Caldwell* decision is to ensure the proper level of juror deliberation. The "10–12" rule serves this value by not giving the jury the consequences of a nonverdict, while at the same time it ensures that the death penalty will not be imposed without the unanimous consent of the jury. *Accord Davis v. State,* 782 S.W.2d 211, 221–22 (Tex.Cr.App.1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990) (quoting *Barfield v. Harris,* 540 F.Supp. 451, 472 n. 17 (E.D.N.C.1982), *affirmed,* 719 F.2d 58 (4th Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984)). The appellant's point of error number eight is overruled.

## VI.  Post-trial

█ The appellant complains in his **sixteenth** point of error that the trial court denied the appellant effective assistance of counsel by advising the jurors that they were under no obligation to answer any questions regarding their service. In his **fifteenth** point of error, the appellant argues that the trial court denied him effective assistance of counsel by releasing the jurors from defense subpoenas issued for a motion for a new trial. The jury members are under no duty to speak to defense counsel about their service or deliberations. *Phillips v. State,* 511 S.W.2d 22, 30–31 (Tex.Cr.App.1974); *Graves v. State,* 382 S.W.2d 486, 489 (Tex. Cr.App.1964), *cert. denied,* 380 U.S. 967, 85 S.Ct. 1114, 14 L.Ed.2d 157 (1965). Point of error number sixteen is overruled.

█ The trial court released the jurors from the defense subpoenas on the ground that the affidavit that supported the motion by the appellant had alleged no misconduct by the jury. Our case law is clear that to sustain a motion for a new trial based on juror misconduct, the appellant was required to have alleged facts that amounted to misconduct through the affidavit of a juror or another person who was in a position to know the facts. *Dugard v. State,* 688 S.W.2d 524, 528 (Tex.Cr.App.

1985). This Court has required "something more than a mere allegation" of juror misconduct to avoid "fishing expeditions" by defendants. *Stephenson v. State,* 494 S.W.2d 900, 909 (Tex.Cr.App.1973). The underlying affidavit by the appellant's investigator revealed that four of the jurors talked with the investigator and gave differing accounts of how the members read the charge. Nothing in the affidavit alleges facts that amount to jury misconduct, and therefore the trial judge was within his discretion in releasing the jury members from the defense subpoenas. Point of error number fifteen is overruled.

The judgment of the trial court is affirmed.

KELLER, J., filed a concurring opinion.

HOLLAND, J., filed a dissenting opinion, in which MEYERS and PRICE, JJ., joined.

JOHNSON, J., filed a dissenting opinion.

KELLER, J., filed a concurring opinion in which KEASLER, J., joined.

Appellant was convicted of capital murder under the "murder for remuneration" provision. *See* Texas Penal Code § 19.03(a)(3). Although the law of parties was contained in the guilt/innocence charge, the punishment charge did not contain the anti-parties special issue required by law. The question presented is whether the death sentence must be reversed as a result of this omission.

A similar but not identical situation was addressed in *Powell v. State,* 897 S.W.2d 307 (Tex.Crim.App.1994). That case involved the trial court's failure to submit the "deliberateness" special issue, submission of which was required by the law in effect at the time. *Id.* at 314–315. The deliberateness special issue asked:

whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with

reasonable expectation that the death of the deceased or another would result. *Id.* at 315 (quoting 1978 version of Texas Code of Criminal Procedure, Article 37.07(b)(1)).[1] We held that a "sentence of death could not be pronounced without an affirmative answer to the 'deliberateness' question." *Id.* at 315 (plurality opinion); *see also Id.* at 318 (Clinton, J. concurring). We followed *Powell* in another case involving the failure to submit the deliberateness special issue. *Smith v. State,* 907 S.W.2d 522, 534 (Tex.Crim.App.1995). In *Smith,* we stated: "By failing to give this question at trial, the court received an incomplete verdict and thus was without authority to sentence appellant to death." *Id.*

Neither *Powell* nor *Smith* conducted a harm analysis; in fact, neither of the opinions in those cases even raised the issue of whether a harm analysis would apply. So, those cases implicitly held either (1) that the error was not subject to a harm analysis or (2) that the error was necessarily harmful. To the extent that *Powell* and *Smith* could be interpreted to hold that the failure to submit a deliberateness instruction is immune from a harmless error analysis, those cases have been overruled by our subsequent decision in *Cain v. State,* 947 S.W.2d 262 (Tex.Crim.App.1997) and undercut by the United States Supreme Court's recent decision in *Neder v. United States,* —— U.S. ——, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). To the extent that *Powell* and *Smith* could be interpreted to hold that the failure to submit a deliberateness instruction is necessarily harmful, that holding has been undercut by *Neder* and, at any rate, can be distinguished from the case at bar.

### 1. Harm analysis applies

In *Cain,* this Court held:

Except for certain federal constitutional errors labeled by the Supreme Court as "structural," no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis.

*Id.* at 264 (footnote omitted). The error at issue here is not of federal constitutional origin. Neither *Powell* nor *Smith* relied upon federal constitutional law for their holdings; both relied merely upon the text of Article 37.071. *See Powell,* 897 S.W.2d at 314–318; *Smith,* 907 S.W.2d at 534. And no constitutional error is apparent. When an element of an offense is not submitted to the jury, the federal constitution is involved because of the defendant's Sixth Amendment right to a jury trial. *United States v. Gaudin,* 515 U.S. 506, 510–511, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *Neder,* at ——, 119 S.Ct. 1827. However, there is no Sixth Amendment right to a jury trial at the punishment stage of a death penalty case. *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). And although the Eighth Amendment requires a finding of personal culpability for a murder before the death sentence may be imposed, *Tison v. Arizona,* 481 U.S. 137, 157–158, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the parties instruction in the present case satisfies that requirement, as will be discussed below. And while Due Process may require a trial court to submit a special issue to which a defendant is entitled under state law, *see Gaudin,* 515 U.S. at 509–510, 115 S.Ct. 2310, an express waiver of the issue negates any generalized due process violation. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702–705, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).[2] Because the error

---

1. All further references to Articles are to the Texas Code of Criminal Procedure unless otherwise indicated.

2. Appellant concedes that defense counsel requested that the anti-parties special issue not be given. Under *Powell,* such a waiver was

ineffective. Judge Clinton opined that waiver was ineffective because a statute prevents a capital murder defendant facing the death penalty from waiving a jury trial. 897 S.W.2d at 318 (Clinton, J. concurring); *see also* Article 1.13(a) & (b), 1.14(a). As ex-

in the present case is not of federal constitutional origin, *Cain* dictates that it must be subjected to a harm analysis. To the extent that *Powell* and *Smith* conflict with *Cain's* holding, they were overruled by *Cain. See Cain,* 947 S.W.2d at 264.

But even if we were to hold the error to be of federal constitutional origin, under Supreme Court precedent such an error would not be structural. In *Neder,* the Supreme Court addressed a trial court's complete failure to submit an element of the offense to the jury. The Supreme Court held that such an error "differs markedly from the constitutional violations we have found to defy harmless error review." 119 S.Ct. at 1833–34. The Supreme Court concluded that the complete omission of an element of an offense was not structural error but was subject to harmless error review. *Id.* 119 S.Ct. at 1833–37. If the omission of an element of an offense is not structural, the omission of a punishment issue would not seem to be structural error either. And, more to the point, the Supreme Court has not labeled it as structural. Hence, *Cain* would control, and the error would be subject to a harm analysis.

### 2. Error is harmless

Because the error in question is non-constitutional and relates to the jury charge, the standard of harm is found in *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.1984). Having failed to object to the absence of the special issue, appellant must show "egregious harm," that is, that he "has not had a fair and impartial trial." *Id.* at 171.

The Supreme Court's discussion of harm in *Neder* is helpful in evaluating whether harm occurred. In determining whether the omission of an offense element was harmless, the Supreme Court considered two competing harm tests: (1) the functional equivalence test and (2) the uncon-

tested issue/overwhelming evidence test. Both tests were considered within the framework of the "beyond a reasonable doubt harmless" standard announced in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The defendant in *Neder* advocated the use of the functional equivalence test to evaluate whether the omission of an element was harmful. As articulated by the defendant, that test would find the omission harmless "where other facts necessarily found by the jury are the 'functional equivalent' of the ... omitted element." *Neder,* 119 S.Ct. at 1835–36 (ellipsis inserted). The Supreme Court postulated the possibility of a broader functional equivalence test: that the omission of an offense element would be harmless "where other facts found by the jury are 'so closely related' to the omitted element 'that no rational jury could find those facts without also finding' the omitted element." *Neder,* 119 S.Ct. at 1836. (quoting from *Sullivan v. Louisiana,* 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).

However, the majority opinion in *Neder* rejected the functional equivalence test as the sole test for harm on the ground that such a test was too narrow, and held that error could also be rendered harmless under an uncontested issue/overwhelming evidence test. *Id.* 119 S.Ct. at 1836–38. The latter test would hold an error harmless "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Id.* 119 S.Ct. at 1837–38.

In a dissenting opinion, Justice Scalia advocated the functional equivalence test as the sole test for harm, believing that an error in omitting an offense element could be harmless only "if the elements of guilt that the jury did find necessarily embraced the one omitted." *Id.* 119 S.Ct. at 1846–47

plained above, however, the right to a jury trial at punishment is not a federal constitu-

tional right.

(Scalia, J. dissenting). "Where the facts necessarily found by the jury (and not merely discerned by the appellate court) support the existence of the element omitted ... the omission ... is harmless." *Id.* (ellipsis inserted).

We have yet to decide whether the method articulated by the Supreme Court majority or by Justice Scalia's dissent is the correct method for evaluating harm under *Almanza* in a case such as this.[3] At any rate, the most favorable (to a defendant) method for determining whether the error is harmful is the narrow form of the functional equivalence test advocated by Justice Scalia. The application of the functional equivalence test to the present case shows the error to be harmless.

The anti-parties issue requires a jury to find that the accused caused the victim's death, intended to kill a person, or anticipated that a human life would be taken:

> in cases in which the jury charge at the guilt or innocence stage permitted the jury to find the defendant guilty as a party under Sections 7.01 and 7.02, Penal Code, whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

Article 37.071 § 2(b)(2). If a defendant were convicted as the primary actor, he would have necessarily caused the death of the deceased. However, if the accused were convicted under a parties liability theory, then the possibility is raised that the accused did not actually cause the deceased's death. The anti-parties issue ensures that a defendant is not given the death penalty after being convicted on the basis of a parties liability theory unless the jury also finds that the defendant intended death or anticipated that a human life

would be taken. In the present case, that function is fulfilled by appellant's conviction.

The theory of parties liability contained in the jury charge on guilt/innocence required the State to show that appellant intended the victim's death. The charge instructed on the "intent to promote or assist" theory of party liability, which was set out as follows:

> A person is criminally responsible for an offense committed by the conduct of another if, acting with *intent* to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

(Emphasis added); *see also* Texas Penal Code § 7.02(a)(2). A subsequent explanation paragraph in the charge required even more explicitly that appellant must have intended the victim's death in order to be convicted:

> Before you would be warranted in finding the defendant guilty of capital murder, you must find from the evidence beyond a reasonable doubt that on the occasion in question ... the defendant, Joseph Andrew Prystash, with *intent* to promote or assist the commission of the offense of *murder* of Farah Fratta, solicited, directed, aided or attempted to aid Robert Alan Fratta and/or Howard Guidry in shooting Farah Fratta *with the specific intention of thereby killing Farah Fratta.*

(Ellipsis inserted and emphasis added). The "intent to promote or assist" theory of parties liability was also incorporated into a separate application paragraph of the charge.

As a result, when the jury convicted appellant of capital murder, it necessarily found that appellant was guilty either (1) as a primary actor, or (2) as a party who

---

**3.** While the *Chapman* standard appears to be more favorable to criminal defendants than the standard announced in *Almanza,* this Court does have the power to interpret the *Almanza* standard more favorably to criminal defendants if we decide that a subsequent Supreme Court case interpreting the federal harmless error standard does not reflect the Legislature's intent in enacting Article 36.19, from which *Almanza* was derived.

*intended* the victim's death. So the jury found everything that was required by the anti-parties charge. Because the guilty verdict ensured that the jury actually made a factual determination that necessarily embraces an affirmative answer to the anti-parties issue, appellant was not deprived of a fair and impartial trial.[4]

And to the extent that *Powell* held that the error in its case (the omission of the deliberateness issue) was necessarily harmful, *Powell* is distinguishable. We have held repeatedly that the term "deliberately" means something beyond "intentionally" or "knowingly." *Ramirez v. State,* 815 S.W.2d 636, 653–654 (Tex.Crim. App.1991); *Tucker v. State,* 771 S.W.2d 523, 537 (Tex.Crim.App.1988), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989); *Heckert v. State,* 612 S.W.2d 549, 552–553 (Tex.Crim.App.1981). So, a jury finding of guilt would not itself constitute a finding of deliberateness.

But while the Legislature may have intended, when it formulated the deliberateness special issue, to require something in addition to intent or knowledge for assessment of the death penalty, the anti-parties issue appears to be included in the statute merely to require that the defendant be found to bear personal moral culpability for the victim's death. Although the deliberateness charge was required in every case, the anti-parties charge is required only when the jury charge permits conviction upon the law of parties. And while the word "deliberately," in common usage, appears to encompass *more* than mere intentional conduct, the words "intended" and "anticipated" (in the anti-parties issue) appear to encompass the same or *less* culpability than the culpable mental states required for establishing the offense of capital murder. So, in some cases, a jury's finding of guilt will be the functional equivalent of an affirmative answer to the anti-parties special issue.[5] Such is the case before us.

With these comments, I join the Court's opinion.

HOLLAND, J., delivered a dissenting opinion in which MEYERS, J. and PRICE, J., joined.

Today, the majority uses the "doctrine of invited error" to "estop" appellant from challenging on appeal the trial court's authority to sentence him to death. Specifically, the majority refuses to allow appellant to challenge any errors arising from the absence of a jury finding on the "anti-parties" special issue because the trial court omitted the special issue from the punishment jury charge at appellant's request. Because the majority insists this Court neither need address the propriety of a request that a special issue be omitted

---

4. There is a theory of parties liability under Texas law that is not the functional equivalent of the anti-parties special issue. "Conspiracy liability" under Texas Penal Code § 7.02(b) does not require that the actor intend or even anticipate the object crime:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having *no intent* to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that *should have been* anticipated as a result of the carrying out of the conspiracy.

(Emphasis added). That theory, however, was *not* submitted in the jury charge in the instant case.

5. In her dissent, Judge Holland contends that my reliance upon the parties charge in the guilt phase to show a lack of harm is faulty because the punishment charge instructed the jury not to consider the parties instructions given in the guilt phase. She misses my point. The parties instructions in the guilt phase incorporated the essential elements of the anti-parties special issue. When the jury returned a verdict of guilt then, it necessarily answered the anti-parties issue affirmatively *in the guilt phase* of the trial. For the same reason, Judge Holland's "incomplete verdict" contention also misses the mark: the anti-parties issue *was* submitted, and that issue *was* answered affirmatively by the jury. But the issue was submitted at the wrong time (the guilt phase of trial) and in the wrong form (as a component of the guilt determination).

nor the effect of omitting a special issue, I must respectfully dissent. I write separately because although the majority is correct in that appellant invited the error, I cannot condone ignoring the fact that without a jury finding on the "anti-parties" special issue, the jury's verdict on punishment was incomplete, and thus, the trial court had no authority to assess appellant's punishment at death.

## I. Punishment Phase

In point of error one, appellant asserts the trial court erred in failing to submit to the jury at the punishment stage the "anti-parties" charge required by Article 37.071 § 2(b)(2). He further submits in point two that the absence of this special issue rendered the verdict illegal and incomplete, and therefore, appellant's death sentence was not authorized.[1] The State contends appellant waived any right to complain about the absence of this issue because appellant affirmatively requested that it be omitted.

### A. *Powell v. State*

In *Powell v. State*, 897 S.W.2d 307, 314–18 (Tex.Crim.App.1994), the trial court, at the appellant's request, failed to submit to the jury the "deliberateness" special issue required by the version of Article 37.071(b)(1) applicable to his case. On appeal, appellant claimed the trial judge erred in the charge to the jury, in accepting an incomplete and illegal verdict, and in sentencing Powell to death without the authority to do so. He insisted that since the jury never answered the requisite is-

sue, the verdict was incomplete and illegal, and the sentence of death was not authorized. We agreed.

We noted that Article 37.071 had been amended just prior to the time of Powell's trial. Among other changes, the "deliberateness" issue had been deleted and a new issue, the "anti-parties" issue, had been added. *Powell*, 897 S.W.2d at 315. In changing the statute, however, the Legislature mandated that the changes only applied to offenses committed on or after September 1, 1991. Powell committed his offense in May 1978. Nonetheless, at his trial, Powell requested that the trial court substitute the "anti-parties" issue for the "deliberateness" issue. The trial court did as Powell requested and the State failed to object. On direct appeal, the State claimed that Powell could not complain about the substitution because he had requested it. *Id.*

We held in *Powell* that a defendant may not waive, and a trial court cannot ignore, the "effective dates of Article 37.071." *Id.* at 316. We explained that this is so because the effective dates of statutes are absolute requirements which are independent of litigants' wishes. Specifically, in the case of Article 37.071, we held that its effective dates define the offense and "determine what elements a jury must find to establish a capital murder punishable by death." *Id.* at 316. By substituting Powell's requested issue for the one legislatively prescribed, the trial court effectively removed an element the jury was required to find before a death sentence could be authorized.

---

1. The guilt/innocence charge in the instant case set out the following:

 All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

 A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits,

encourages, directs, aids, or attempts to aid the other person to commit the offense. This definition, which tracks the language of Texas Penal Code §§ 7.01 and 7.02, was applied to the facts of the case in the application paragraph of the charge. Under the version of Article 37.071 in effect at the time of his trial, whenever a charge at guilt/innocence authorized the jury to find a defendant guilty as a party under Texas Penal Code §§ 7.01 and 7.02, a trial judge was *required* to submit the "anti-parties" charge to the jury.

In a concurring opinion in which he joined the Court's opinion with a "qualification," Judge Clinton noted that while the Court's opinion framed the issue as whether the "effective dates of statutes are absolute requirements," this phraseology was actually a "subtle but significant *distortion* of the true issue" in the case. Judge Clinton posited that a jury answer to the deliberateness issue was absolutely required and unwaivable because the law prohibits a defendant from waiving a trial by jury in a death penalty case. *See* Arts. 1.13 and 1.14. Thus, without a jury's answer to that specific issue, the punishment verdict would be incomplete, and a death sentence would not be authorized.[2]

## B. Majority's Overruling of *Powell*

The majority insists "[t]he *Powell* Court should not have permitted Powell to raise as error an action that he procured," and thus, overrules it "insofar as it did so." (ante at 532). The majority claims the *Powell* Court, by analyzing the question in terms of the rules for waiver, "overlooked the crucial distinction between rules [for waiver] and the law of invited error." The majority insists the question in *Powell* was "not whether he could waive a right, it was whether he could complain of an action he requested." Contrary to the majority, however, the *Powell* Court did address whether a defendant may challenge the trial court's authority to assess his punishment at death even though the error arose from an action he procured.

The defendant in *Powell*, like appellant, requested that a special issue be omitted from the jury charge on punishment. Although the *Powell* Court addressed the matter in terms of whether the defendant could request that the special issue be omitted, its reasoning demonstrates a willingness to permit a defendant to challenge the trial court's authority to assess the death penalty despite the fact that it was the defendant who procured the error. Even though the defendant invited the error in *Powell*, this Court refused to ignore the fact that by granting the defendant's request it omitted an element the jury had to find beyond a reasonable doubt before the trial court had the authority to assess punishment at death. Art. 37.071(2)(b).[3]

2. *Powell*, 897 S.W.2d at 318 (Clinton, J., concurring); *see also Simpson v. State*, 991 S.W.2d 798, at 3 (Tex.Crim.App. 1998) (citing to Judge Clinton's concurrence in *Powell* with approval). An unauthorized sentence is void. *Ex parte Beck*, 922 S.W.2d 181, 182 (Tex. Crim.App.1996); *Levy v. State*, 818 S.W.2d 801, 802 (Tex.Crim.App.1991).

3. The pertinent parts of Article 37.071 § 2 read as follows:
   (b) On conclusion of the presentation of the evidence, the court **shall** submit the following issues to the jury:
   (1) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
   (2) **in cases in which the jury charge at the guilt or innocence stage permitted the jury to find the defendant guilty as a party under Sections 7.01 and 7.02,** Penal Code, whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

(c) The state must prove each issue submitted under Subsection (b) of this article beyond a reasonable doubt, and the jury shall return a special verdict of "yes" or "no" on each issue submitted under Subsection (b) of this article.

(d) The court shall charge the jury that:
   *   *   *   *   *   *
   (2) it may not answer any issue submitted under Subsection (b) of this article "yes" unless it agrees unanimously and it may not answer any issue "no" unless 10 or more jurors agree; ...
   *   *   *   *   *   *

(e) The court shall instruct the jury that **if the jury returns an affirmative finding to each issue submitted** under Subsection (b) of this article, it **shall** answer the following issue:
   Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Today, the majority avoids addressing this consequence by concluding the matter need not be addressed because "we resolve the points before us with the doctrine of waiver."

Although her reasoning differs somewhat from the majority, Judge Keller also avoids addressing the effect of omitting a special issue. In her concurring opinion, Judge Keller claims *Powell* was overruled by *Cain v. State*, 947 S.W.2d 262 (Tex. Crim.App.1997) because the omission of a special issue is statutory error. Op. at 539. Under *Cain* all statutory errors are subject to a harmless error review. Nonconstitutional error requires a reviewing court to examine the impact of the error on the *jury's verdict* to determine whether it affected the "substantial rights" of the defendant. Tex.R.App. P. 44.2(b). The error in the instant case, however, is not amenable to harmless error review because *there is no jury verdict* on punishment. It is for this reason that *Cain* neither overrules *Powell* nor applies to the instant case.

She also claims this error did not result in egregious harm to appellant, because "the guilt/innocence charge in the present case required the State to show that appellant intended the victim's death. The guilt/innocence charge instructed on the 'intent to promote or assist' theory of party liability." Op. at 540. The only punishment charge instruction relating to parties specifically prohibited the jury from considering the party liability instructions given at guilt/innocence in answering the special issues:

> However, in this punishment phase of the trial you should not consider the instructions given you in the first phase of the trial that relate to the law of parties and the responsibility of the par-

(Emphasis added).

4. In her concurring opinion, Judge Keller claims that even if the omission of a special issue was of federal constitutional origin, according to *Neder v. United States*, —— U.S. ——, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) the error is not structural. *Neder* is inapplica-

ties for the acts of others in the commission of the offense. You shall consider only the conduct and state of mind of this defendant in determining what your answers to the Special Issues shall be.

Judge Keller is essentially arguing that the guilt/innocence parties instruction, which the jury was not allowed to apply at punishment, somehow makes the omission of the special issue harmless. This reasoning is faulty because it requires the jury to consider parties liability at punishment in violation of the capital punishment statute. Art. 37.071 § 2(b)(2).

Both the majority's use of this equitable doctrine, and Judge Keller's use of *Cain*, fail to appreciate the unique role special issues play.[4] In Texas, the "anti-parties" special issue plays a vital role in determining whether a defendant is death eligible. In a capital case, the question the jury must answer during the guilt/innocence phase is whether a capital offense was committed and whether the defendant committed it. During the punishment phase, however, the jury must determine the defendant's death worthiness. That is, the jury must determine whether death is an appropriate punishment for the defendant. *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994); *see also Zant v. Stephens*, 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (at punishment jury makes "an individualized determination on the basis of the character of the individual and the circumstances of the crime"). When the charge at guilt/innocence authorizes the jury to find a defendant guilty on a theory of party liability, the trial court must given an "anti-parties" special issue to prevent a defendant, found guilty as a party, from being sentenced to death.[5] Art. 37.071 § 2(b)(2).

ble to the instant case because it examines the omission of an element of the offense at the guilt phase of a defendant's trial.

5. Effective September 1, 1991, the Texas Legislature deleted the "deliberateness" special issue from Article 37.071 and added the "anti-

The *Powell* Court recognized that a trial court cannot eliminate a special issue created by our Legislature, in response to the dictates of the United States Supreme Court, although the defendant requests that it be omitted. A contrary holding would have invited the judicial branch to ignore the legislature's directives in matters of capital punishment procedure. In our legal system, the parties are adversaries, the trial judge is not. It is the trial judge who must carry out the duties imposed upon him or her by law. The majority's holding today which "estops" appellant from challenging the trial court's lack of authority to assess his punishment at death transforms what the Legislature has enacted as a mandatory duty, in response to the dictates of the Supreme Court, into a discretionary act.

## II. Waiver of Jury Trial

Also, the majority insists the absence of a jury finding on a special issue from the jury's verdict does not violate the legislature's prohibition against allowing a capital defendant to waive a jury trial. Instead, the majority claims "the worst that can be said is that the jury returned a verdict which did not answer one issue." (ante at 532). It is, however, precisely the absence of a finding on an issue legislatively assigned to the jury which violates the waiver prohibition. *See* Tex.Code.Crim. Proc.

Art. 1.14(a); *See* Art. 37.071 § 2(b)(2). By upholding appellant's sentence of death despite the lack of a jury finding on a special issue authorizes the waiver of a finding essential to a determination of death worthiness.

The majority attempts to diminish the significance of omitting a special issue from the jury charge at punishment in a capital case by likening it to the omission of an element of an offense in the jury charge at guilt/innocence. (ante at 532. Such a comparison is invalid because if an element is omitted from the jury charge at guilt/innocence, the sufficiency of the evidence presented at trial can be examined to determine whether the State proved up that element. *See Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App.1997) (sufficiency of evidence is not measured by the elements of the offense set out in the jury charge, but the elements of the offense as defined by the "hypothetically correct" jury charge). When a special issue is omitted in the charge on punishment, however, the evidence cannot be reviewed to determine whether a sentence of death was appropriately assessed because there is no jury verdict in on punishment. Consequently, the effect of not having a jury finding on a special issue is that it renders the verdict incomplete.

parties" special issue. Prior to this time, an "anti-parties" charge was only required when requested by a defendant. We have noted in several opinions that the purpose of an "anti-parties" charge is to protect a defendant's constitutional rights by ensuring that a jury's punishment-phase deliberations are based solely upon the conduct of the defendant and not that of another party. *See Martinez v. State*, 899 S.W.2d 655, 657 (Tex.Crim.App. 1994), *cert. denied*, 516 U.S. 942, 116 S.Ct. 378, 133 L.Ed.2d 301 (1995). In other words, to ensure that a defendant is not sentenced to death merely for being a party to the offense.

We noted in these early cases that when the law of parties is presented to the jury in the guilt phase of a trial, a trial court should give an "anti-parties" charge at punishment when requested. *Belyeu v. State*, 791 S.W.2d 66, 73

(Tex.Crim.App.1989), *cert. denied*, 499 U.S. 931, 111 S.Ct. 1337, 113 L.Ed.2d 269 (1991). However, absent such a request or an objection, an "anti-parties" charge was not required by statute or by the constitution. *Id.; Johnson v. State*, 853 S.W.2d 52⁻, 536 (Tex. Crim.App.1992), *cert. denied*, 51⊍ U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993). We even went so far as to say that it would be inappropriate to have a blanket rule that each time a charge on the law of parties is given at the guilt/innocence stage of a capital murder case, an "anti-parties" charge must be given on request at the punishment stage. *Belyeu*, 791 S.W.2d at 72–73. The 1991 amendments to Article 37.071, however, appear to be the Legislature's response to those cases in that the plain language of the amended statute indicates that such a blanket rule is appropriate.

## III. Conclusion

In the instant case, there is no question that in order for the jury to have determined appellant death worthy, it had to return an affirmative finding on the "anti-parties" special issue. Thus, the special issue was an "element [the] jury [had to] find to establish a capital murder punishable by death." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991); *Powell*, 897 S.W.2d at 316.[6] Accordingly, because there was no jury finding on the "anti-parties" special issue the trial court had no authority to assess appellant's sentence at death. With these concerns in mind, I must respectfully dissent.

JOHNSON, J., filed a dissenting opinion.

During the punishment phase of appellant's trial, the trial court, at appellant's request, omitted from the jury charge the "anti-parties" charge required by TEX. CODE CRIM. PROC. art. 37.071, § 2(b)(2). Today the majority overrules this point of error on the basis of the doctrine of "invited error." *Ante*, at 529–533.

As we have recognized on several occasions, art. 37.071 was enacted by our legislature as a response to *Furman v. Georgia*, 408 U.S. 238, 239–240, 92 S.Ct. 2726, 2727, 33 L.Ed.2d 346 (1972) (decided in conjunction with *Branch v. Texas*), in which the United States Supreme Court held that the prior Texas death penalty scheme was unconstitutional. *See, e.g.,* *Barefield v. State*, 784 S.W.2d 38, 45 (Tex. Crim.App.1989), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990); *Mead v. State*, 645 S.W.2d 279, 280–281 (Tex.Crim.App.1983), *cert. denied,* 465 U.S. 1041, 104 S.Ct. 1318, 79 L.Ed.2d 714 (1984); *Staley v. State*, 887 S.W.2d 885, 899 (Tex.Crim.App.1994) (Baird, J.,

concurring), *cert. denied,* 514 U.S. 1020, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1995). The legislature subsequently amended art. 37.071, including § 2(b)(2), in response to *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). *See* 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 31.70 (1995). It is clear, then, that the legislature has set up a delicate scheme in order to accommodate concerns when there is the possibility that the "ultimate" punishment will be meted out: the taking of a defendant's life.

Today, however, the majority helps to effectively dismantle this carefully enacted scheme, by relying on a decision from this court which is more than ninety years old, and which itself is based on a line of civil cases. *Ante*, at 531. Whether stated in terms of "waiver" or "invited error," it defies common sense to allow the penalty of death to be imposed, despite the failure of the jury to determine the very issues which the legislature has mandated *shall* be answered in order for that punishment to be authorized. Given the circumstances under which our current capital sentencing scheme was enacted and the concerns addressed by that scheme, such a decision can only be described as reckless.

It is also curious that the majority chooses to ignore the state's participation in the "invited error." What is sauce for the gander is sauce for the goose. The statements of defense counsel as noted by the majority are found at S.F. vol. VI, at 181. The trial court agreed to delete special issue No. 2, without objection by the state (S.F., vol. VI, at 182). I am unable to discover anything in the record to support the majority's statement that the trial court "[forbade] the State from asking the

---

6. In *Mosley v. State*, 983 S.W.2d 249, No. 72,281, slip op. at 90–91 (Tex.Crim.App. July 1, 1998)(op. on motion for reh'g), this Court stated that a defendant can waive reliance on and submission of the mitigation issue. *See* Art. 37.071 § 2(e). The opinion distinguishes the mitigation issue from the "deliberateness"

issue in *Powell* on the basis that the mitigation issue has no burden of proof to be carried by the State. The "anti-parties" issue, like the deliberateness issue in the prior statute, has to be proven beyond a reasonable doubt by the State. *See* Art. 37.071 § 2(c).

prospective jurors about [the anti-parties charge] in voir dire examination."

During the punishment-charge conference, the following exchange took place:

THE COURT: Anything from the State as to any objections to the Court's, proposed Court's charge?

MS. SIEGLER: No, sir.

THE COURT: Any specially requested charges?

MS. SIEGLER: No, sir.

(S.F. vol. XXII, at 1275.) If appellant invited error, then the state is equally culpable in that invitation. If appellant must suffer the consequences of invited error, then so must the state. Because the state did not object to the deletion of the required instruction at the time the trial court agreed to delete it or when specifically queried by the trial court as to possible objections, I would hold that in not objecting to the error the state thereby elected to waive the death penalty, as it may do in any capital case. The appropriate resolution would then be for this Court to reform the sentence to life. I dissent.