# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00580-CR

**Bobby Ray Holts, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT**
**NO. 52,194, HONORABLE C. W. DUNCAN, JR., JUDGE PRESIDING**

---

A jury found appellant Bobby Ray Holts guilty of aggravated assault and assessed his punishment, enhanced by a previous felony conviction, at imprisonment for twenty years and a $2000 fine. *See* Tex. Pen. Code Ann. ' 22.02 (West 1994). Appellant contends the district court erred by refusing to instruct the jury on the law of self-defense or, alternatively, that his trial counsel was ineffective for failing to properly raise and preserve the self-defense issue. Appellant also contends the court erred by permitting the jury to assess punishment. We overrule these contentions and affirm the conviction.

This prosecution arose from an altercation at a Temple rooming house. Michael Williams testified that he was outside the house when he heard someone pounding on a door. He went inside and saw appellant, who he knew had been instructed not to enter the building, standing in the hallway. Williams went to the kitchen and called the police, then went to his room and armed himself with a table leg. Williams returned to the hallway, told appellant he was trespassing, and asked him to leave. A woman who

was with appellant approached Williams with her hand in her purse. Williams Astiff-armed@ the woman to keep her away from him. With that, appellant attacked Williams with a knife. Williams struck appellant=s arm with the table leg, then dropped the table leg and seized appellant=s arm. During the struggle, Williams was knocked to the floor. Appellant was on top of Williams, saying AI am going to stab you in your heart@ and AI am going to kill you.@ Williams continued to hold appellant=s arm to avoid being stabbed.

The complaining witness, Michael Ransburg, testified that he was in his room when he heard the commotion. He went downstairs and found appellant sitting on Williams and threatening to kill him, and Williams struggling to hold appellant=s arm. Ransburg ran up behind appellant, Asecure[d] the knife, grabbed [appellant] around his neck, and we backed right up into a corner like that.@ Ransburg began to move appellant toward the door, telling him he needed to leave the building. Appellant struggled and threatened to cut Ransburg. As Ransburg forced appellant out the door, appellant=s arm came free and he cut Ransburg above the eye with his knife. At this point, the police arrived and the fracas ended.

Appellant contends the district court erred by refusing to instruct the jury on the law of self-defense. *See* Tex. Pen. Code Ann. ' 9.31 (West Supp. 2002).[1] That law provides that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other=s use or attempted use of unlawful force. *Id*. Appellant, after reviewing the evidence summarized above, asserts that he Acould have reasonably believed

---

[1]  In his brief, appellant argues that he was entitled to an instruction on the use of deadly force in self-defense. *See* Tex. Pen. Code Ann. ' 9.32 (West Supp. 2002). At trial, however, he asked only for an instruction on the use of force in self-defense.

that his use of deadly force was immediately necessary to protect himself from Ransburg=s unlawful use of deadly force against him, particularly in light of the concerted actions of both Ransburg and Williams.@[2]

We find no support in the record for appellant=s assertion that Ransburg and Williams were acting in concert. Furthermore, there is no evidence that Ransburg used unlawful force against appellant. To the contrary, the record supports a finding that Ransburg was justified in using force against appellant in defense of Williams. *See* Tex. Pen. Code Ann. ' 9.33 (West 1994) (defense of third person). In the absence of evidence that Ransburg was using unlawful force against appellant, appellant was not entitled to claim that his use of force against Ransburg was justified by self-defense.[3] Point of error two is overruled.

Anticipating the possibility that we would overrule point two, appellant asserts in point three that his trial counsel was ineffective because he failed to develop the evidence in such a way as to entitle appellant to a self-defense instruction. Appellant argues that counsel should have called him to testify Ato what he observed and thought during this attack [and] why it was reasonable from his point of view to conclude that his use of deadly force was necessary.@ Appellant asserts that it cannot be reasonable trial strategy to rely upon a defense while offering no evidence raising the defense.

---

[2] There was also evidence that an unidentified person struck appellant with a mop while Ransburg was attempting to wrestle him out the door. There is no evidence that this person was acting in concert with either Williams or Ransburg.

[3] Nor is there evidence that Ransburg used deadly force against appellant, further disentitling appellant from using deadly force. *See* Tex. Pen. Code ' 9.32(a)(3)(A).

There are many reasons why a defense attorney might choose not to call his client to testify, and this is the very sort of strategic decision that appellate courts generally do not second-guess. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In this case, we know that appellant had at least one previous felony conviction, and counsel might have concluded that whatever help appellant=s testimony could have been in advancing a claim of self-defense would have been outweighed by the impact of revealing his criminal record to the jury at the guilt-innocence stage. On this record, we cannot state that counsel=s decision to proceed as he did was outside the range of reasonable professional assistance. *See id.* Point of error three is overruled.

Finally, appellant urges that the district court erred by submitting the question of punishment to the jury. In noncapital cases, the trial judge assesses punishment unless (1) the defendant files a sworn motion for jury-recommended probation before trial begins or (2) the defendant elects in writing before jury selection begins to have the jury assess punishment. Tex. Code Crim. Proc. Ann. art. 37.07, ' 2(b) (West Supp. 2002). After a finding of guilty, the defendant may, with the State=s consent, change his election of the one who assesses punishment. *Id*.

As appellant concedes, Athere was great confusion concerning who was to assess the punishment@ in this case. Six weeks before trial began, appellant filed a written election asking that the jury assess punishment in the event of a conviction. Two days later, appellant filed a written election asking that the judge assess punishment. Before jury selection began, defense counsel made a record of appellant=s decision to reject the State=s plea-bargain offer. In doing so, counsel stated on the record that Ayou [appellant] have advised me that you, if convicted you would want this jury to set your punishment.@ The

prosecutor subsequently discussed punishment issues with the jury panel during voir dire without objection or comment by appellant. At the charge conference after evidence closed at the guilt-innocence stage, defense counsel told the court:

> Mr. Holts and I filed with the Court defendant=s election that the judge set punishment in [the] event defendant [is] found guilty and at that same time we also filed a document with the Court stating the defendant=s election that the jury set punishment in the event defendant [is] found guilty.
>
> We proceeded with the election that the jury set punishment at Mr. Holts=s request at the beginning of this trial. Mr. Holts has now asked me to present to the Court his desire to change that election from the jury setting the punishment in the event we are found guilty to that the judge set punishment in the event the defendant is found guilty.

Believing the motion was premature, the court deferred its ruling until after the jury returned a verdict. After the jury found appellant guilty, the prosecutor informed the court that the State did not consent to the change of election and the court accordingly overruled the motion. The punishment phase of trial was thereafter held before the jury.

Appellant now argues that no change of election was required. Relying on the opinion in *Ortegon v. State*, 459 S.W.2d 646, 648 (Tex. Crim. App. 1970), appellant contends his written pretrial election to have the judge assess punishment had the effect of withdrawing his previously filed election to have the jury assess punishment. Appellant goes on to argue that counsel=s subsequent oral statement that appellant elected jury punishment was ineffective because it was not in writing as required by article 37.07, section 2(b). Therefore, concludes appellant, the only legally effective election was that the judge assess punishment and it was error to submit punishment to the jury.

**5**

Appellant did not make this argument below. To the contrary, appellant=s position at trial was that he had elected prior to trial to submit the question of punishment to the jury. It was for that reason that appellant later asked for permission to change his pretrial election and submit the question of punishment to the judge. Having asked the court to give effect to his election for jury punishment, appellant is in no position to argue for the first time on appeal that this election was void and that the only operative election was for the judge to assess punishment. *See* Tex. R. App. P. 33.1(a)(1)(A) (preservation of error); *Prytash v. State*, 3 S.W.3d 522, 530-31 (Tex. Crim. App. 1999) (discussing concept of invited error).

Even if appellant=s contention is properly before us, it is without merit. In *Ortegon*, the defendant originally filed a written motion for probation, but he later filed a written election that the judge assess punishment. 459 S.W.2d at 648. After the jury had been deliberating his guilt for some time and had sent out several questions, the defendant asked to change his election and have the jury assess punishment in the event of a conviction. *Id*. The State did not consent and the request was denied. *Id*. On appeal, the defendant argued that his motion for probation made it mandatory that the jury assess punishment. The court rejected this argument, saying Athe written request to have the judge assess punishment had the effect of withdrawing any request there may have been for the jury to consider the issue of probation and constituted a waiver thereof.@ *Id*. Citing this holding, appellant argues that his written pretrial request to have the judge assess punishment had the effect of withdrawing his previous request that the jury assess punishment.

Appellant=s argument would be more persuasive if he had done nothing more than file the two written elections in the order that he did. But as appellant concedes, he announced through counsel

**6**

before jury selection began that he elected to have the jury assess punishment. This announcement had the effect of reinstating appellant=s earlier election to have the jury assess punishment and distinguishes this case from *Ortegon*. Appellant argues to the contrary, pointing out that article 37.07, section 2(b) requires that the jury election be in writing. But appellant=s election that the jury assess punishment *was* in writing; indeed, appellant had filed two written punishment elections, one asking that the jury assess punishment and the other asking that punishment be determined by the judge. Appellant=s pretrial oral announcement merely designated which of the two written punishment elections appellant wished to be operative. In fact, this is exactly the way defense counsel characterized it when, at the close of evidence, he asked for permission to change the election from jury to judge. Point of error one is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:  May 16, 2002

Do Not Publish