COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-113-CR
 
SANFORD FRANCIOS THIERGOOD       
           
           
           
           
APPELLANT
V.
THE STATE OF TEXAS           
           
           
           
           
           
STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
A jury found Appellant Sanford Francios
Thiergood guilty of the offense of aggravated robbery with a deadly weapon and
assessed punishment at ten years' confinement. Appellant complains that the
trial court erred by allowing the State to introduce evidence concerning his
police administered polygraph test in order to rebut his own testimony regarding
the test's results. We affirm.
I. BRIEF FACTUAL HISTORY
Because sufficiency of the evidence is not
in issue, we need only briefly discuss the facts of this case. On September 30,
2000, Appellant entered an Arlington Chuck E. Cheese restaurant where Appellant
had formerly been employed, wearing a werewolf mask, and robbed an assistant
manager and cook at gunpoint. Appellant thought that he had stolen less than
$2,000, but the assistant manager testified at trial that the loss was closer to
$4,000.
Detective Tommy LeNoir of the Arlington
Police Department interviewed Appellant on November 17, 2000 regarding the
robbery. As part of the interview, the police administered a polygraph
examination on Appellant. After the test, Appellant thought about what he had
done and decided "to get [it] all off [his] chest." Appellant gave
Detective LeNoir a written statement confessing to the robbery. Subsequently,
Appellant took Detective LeNoir to his house and turned over the nine millimeter
pistol used in the robbery.
During his trial, Appellant testified that
he committed the robbery because he needed money for rent and to support his
wife and child. He also admitted to committing the third-degree felony of
criminal mischief in 1990 and the misdemeanor offense of unlawful carrying of a
weapon in 1993.
 
II. LEGAL ANALYSIS
In his sole issue, Appellant complains
that the trial court erred by allowing Detective LeNoir to testify about the
results from Appellant's polygraph examination. The State argues that Appellant
should not be permitted to profit from his own error because, under the invited
error doctrine, Appellant first opened the door by offering misleading testimony
regarding the polygraph examination and his motivation for confessing. As such,
the State contends that the court properly allowed Detective LeNoir's
impeachment testimony.
A. Facts Pertaining to the
Polygraph Examination
During trial, Appellant took the stand in
his own defense. On direct examination, the following discussion occurred
between Appellant and his attorney:

        
 Q. So you met with the detective and you gave him a confession; is that right?
        
 A. I met with the detective. He finally -- after -- he asked me, "Do you
 want to come in voluntarily and take the polygraph test and submit to
 relinquishing the possibility." After speaking a couple of times, he
 said, "Hey, just come in and take a polygraph test or let's do an
 interview and we can eliminate you as a suspect." Because the first time
 I denied it.
        
 Q. And then when you went and talked to the detective, what happened?
        
 A. After the process of their interrogation, Officer LeNoir actually stated
 that I was free to go. The test -- there was a polygraph test -- proved me
 inconclusive. Meaning he couldn't determine if I was lying or telling the
 truth. It just said inconclusive. He said, "There's a probability of
 --["] they called it criminal knowledge or something like that. That
 there was some indication I had some knowledge of it or whatever. But they
 stated very clearly that the test had proven inconclusive and I was free to go
 was Officer LeNoir's exact words.
        
 At that time, they got up and left and I stayed there. And I really started to
 deal with what I had done. The magnitude of what I had done was sitting in my
 face. And I had a choice that I could have lied and maybe pushed off the
 investigation a little bit longer. They may have started to investigate my
 life, my wife, my children and everyone else -- or not children, pardon me,
 friends and family.
        
 At that point, like I said, knowing -- even going into it I knew it was wrong,
 but at this point I said, "I just want to get this all off my
 chest." Not because it's going to be a cake walk. Just go ahead and get
 this thing over with, face the music, face the people, face the crime. And
 when Officer LeNoir returned, I then gave him a statement.

 
The State recalled Detective LeNoir during
its rebuttal case, and Detective LeNoir testified as follows:

        
 Q. Okay. When you were interviewing Mr. Thiergood, the statement that he gave
 was after a polygraph examination; is that correct?
        
 A. Yes.
        
 Q. What were the results of Mr. Thiergood's polygraph examination?
        
 A. It was deceptive.
        
 Q. Did you tell the Defendant that there were indications of deception on the
 polygraph examination?
        
 A. Yes.
        
 Q. Did you, at any point, tell him that the results of the examination were
 inconclusive?
        
 A. No.
        
 Q. Did you, at any point, tell him that he was cleared and that he was free to
 leave?
        
 A. No.
        
 Q. In fact, you pointed out that he had been deceptive and that -- you gave
 him further opportunity to explain himself; is that true?
        
 A. Yes.
        
 Q. And at that point he gave a statement?
        
 A. Correct.

 
B. Application of Law to Facts
Both Appellant and the State acknowledge
that Texas appellate courts have generally refused to permit both criminal
defendants and the State from introducing the results of polygraph examinations.
See Tennard v. State, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990), cert.
denied, 501 U.S. 1259 (1991); Nethery v. State, 692 S.W.2d 686,
700 (Tex. Crim. App. 1985), cert. denied, 474 U.S. 1110 (1986); Marcum
v. State, 983 S.W.2d 762, 765 (Tex. App.--Houston [14th Dist.]
1998, pet. ref'd) ("Because of their inherent unreliability and tendency to
be unduly persuasive, polygraph examination results are inadmissible for any
purpose in a criminal proceeding on proper objection."). Courts have also
recognized "[a] limited exception to this rule is where one party has
'opened the door' for the other party to introduce the results from a polygraph
test." Hoppes v. State, 725 S.W.2d 532, 536 (Tex. App.--Houston [1st
Dist. ]1987, no pet.); see also Lucas v. State, 479 S.W.2d
314, 315 (Tex. Crim. App. 1972); Rodriguez v. State, 170 Tex. Crim.
295, 297-98, 340 S.W.2d 61, 64 (Tex. Crim. App. 1960).
Under the doctrine of invited error, a
criminal defendant may not create error, whether statutory or constitutional,
and then submit that error as a basis for appellate relief. See Garcia v.
State, 919 S.W.2d 370, 393-94 (Tex. Crim. App. 1994) (op. on reh'g); see
also Prystash v. State, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999)
(distinguishing waiver from invited error), cert. denied, 529 U.S. 1102
(2000); Lucas, 479 S.W.2d at 315. In Lucas, the defendant,
while testifying on his own behalf, misled the jury regarding the results of a
polygraph exam he took. 479 S.W.2d at 315. The State later offered testimony
from the district attorney, which rebutted the defendant's testimony. Id.
The court of criminal appeals held that "[a]lthough the results from a
polygraph test are ordinarily not admissible in evidence," on the facts of
the case, the defendant "'opened the door' for the [S]tate to introduce the
complained of testimony." Id.
Here, Appellant, in response to questions
from his own attorney, voluntarily and nonresponsively testified as to the
results of his polygraph test. Consequently, we hold that under the facts of
this case, Appellant opened the door for the State to introduce Detective
LeNoir's rebuttal testimony concerning Appellant's polygraph examination and may
not complain of or profit by such error on appeal. See id.; Hoppes,
725 S.W.2d at 536. Accordingly, we overrule Appellant's sole issue.
III. CONCLUSION
Having overruled Appellant's sole issue,
we affirm the trial court's judgment.
 
                                                                               
PER CURIAM
 
PANEL F: GARDNER, J.; CAYCE, C.J.; and
WALKER, J.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
[DELIVERED: MARCH 6, 2003]

1. See Tex. R. App. P. 47.4.