THEIRGOOD V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-113-CR

SANFORD FRANCIOS THIERGOOD APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury found Appellant Sanford Francios Thiergood guilty of the offense of aggravated robbery with a deadly weapon and assessed punishment at ten years’ confinement.  Appellant complains that the trial court erred by allowing the State to introduce evidence concerning his police administered polygraph test in order to rebut his own testimony regarding the test’s results.  We affirm.

I.  BRIEF FACTUAL HISTORY

Because
 sufficiency of the evidence is not in issue, we need only briefly discuss the facts of this case.
  On September 30, 2000, Appellant entered an Arlington Chuck E. Cheese restaurant where Appellant had formerly been employed, wearing a werewolf mask, and robbed an assistant manager and cook at gunpoint.  Appellant thought that he had stolen less than $2,000, but the assistant manager testified at trial that the loss was closer to $4,000.

Detective Tommy LeNoir of the Arlington Police Department interviewed Appellant on November 17, 2000 regarding the robbery.  As part of the interview, the police administered a polygraph examination on Appellant.  After the test, Appellant thought about what he had done and decided “to get [it] all off [his] chest.”  Appellant gave Detective LeNoir a written statement confessing to the robbery.  Subsequently, Appellant took Detective LeNoir to his house and turned over the nine millimeter pistol used in the robbery.

During his trial, Appellant testified that he committed the robbery because he needed money for rent and to support his wife and child.  He also admitted to committing the third-degree felony of criminal mischief in 1990 and the misdemeanor offense of unlawful carrying of a weapon in 1993.

II.  LEGAL ANALYSIS

In his sole issue, Appellant complains that the trial court erred by allowing Detective LeNoir to testify about the results from Appellant’s polygraph examination.  The State argues that Appellant should not be permitted to profit from his own error because, under the invited error doctrine, Appellant first opened the door by offering misleading testimony regarding the polygraph examination and his motivation for confessing.  As such, the State contends that the court properly allowed Detective LeNoir’s impeachment testimony.

A.  Facts Pertaining to the Polygraph Examination

During trial, Appellant took the stand in his own defense.  On direct examination, the following discussion occurred between Appellant and his attorney:

Q.  So you met with the detective and you gave him a confession; is that right? 

A.  I met with the detective.  He finally -- after -- he asked me, “Do you want to come in voluntarily and take the polygraph test and submit to relinquishing the possibility.”  After speaking a couple of times, he said, “Hey, just come in and take a polygraph test or let’s do an interview and we can eliminate you as a suspect.”  Because the first time I denied it.

Q.  And then when you went and talked to the detective, what happened?

A.  After the process of their interrogation, Officer LeNoir actually stated that I was free to go.  The test -- there was a polygraph test -- proved me inconclusive.  Meaning he couldn’t determine if I was lying or telling the truth.  It just said inconclusive.  He said, “There’s a probability of --[“] they called it criminal knowledge or something like that.  That there was some indication I had some knowledge of it or whatever.  But they stated very clearly that the test had proven inconclusive and I was free to go was Officer LeNoir’s exact words.

At that time, they got up and left and I stayed there.  And I really started to deal with what I had done.  The magnitude of what I had done was sitting in my face.  And I had a choice that I could have lied and maybe pushed off the investigation a little bit longer.  They may have started to investigate my life, my wife, my children and everyone else -- or not children, pardon me, friends and family.  

At that point, like I said, knowing -- even going into it I knew it was wrong, but at this point I said, “I just want to get this all off my chest.”  Not because it’s going to be a cake walk.  Just go ahead and get this thing over with, face the music, face the people, face the crime.  And when Officer LeNoir returned, I then gave him a statement.

The State recalled Detective LeNoir during its rebuttal case, and Detective LeNoir testified as follows:

Q.  Okay.  When you were interviewing Mr. Thiergood, the statement that he gave was after a polygraph examination; is that correct?

A.  Yes.  

Q.  What were the results of Mr. Thiergood’s polygraph examination? 

A.  It was deceptive.

Q.  Did you tell the Defendant that there were indications of deception on the polygraph examination?

A.  Yes.

Q.  Did you, at any point, tell him that the results of the examination were inconclusive?

A.  No.

Q.  Did you, at any point, tell him that he was cleared and that he was free to leave?

A.  No.

Q.  In fact, you pointed out that he had been deceptive and that -- you gave him further opportunity to explain himself; is that true?

A.  Yes. 

Q.  And at that point he gave a statement?

A.  Correct.

B.  Application of Law to Facts

Both Appellant and the State acknowledge that Texas appellate courts have generally refused to permit both criminal defendants and the State from introducing the results of polygraph examinations.  
See Tennard v. State, 
802 S.W.2d 678, 683 (Tex. Crim. App. 1990), 
cert. denied
, 501 U.S. 1259 (1991);
 Nethery v. State, 
692 S.W.2d 686, 700 (Tex. Crim. App. 1985), 
cert. denied
, 474 U.S. 1110 (1986);
 
Marcum v. State
, 983 S.W.2d 762, 765 (Tex. App.—Houston [14
th
 Dist.] 1998, pet. ref’d) (“Because of their inherent unreliability and tendency to be unduly persuasive, polygraph examination results are inadmissible for any purpose in a criminal proceeding on proper objection.”).  Courts have also recognized “[a] limited exception to this rule is where one party has ‘opened the door’ for the other party to introduce the results from a polygraph test.”  
Hoppes v. State
, 725 S.W.2d 532, 536 (Tex. App.—Houston [1
st
 Dist. ]1987, no pet.); 
see also
 
Lucas v. State
, 479 S.W.2d 314, 315 (Tex. Crim. App. 1972); 
Rodriguez v. State
, 170 Tex. Crim. 295, 297-98, 340 S.W.2d 61, 64 (Tex. Crim. App. 1960).

Under the doctrine of invited error, a criminal defendant may not create error, whether statutory or constitutional, and then submit that error as a basis for appellate relief.  
See Garcia v. State
, 919 S.W.2d 370, 393-94 (Tex. Crim. App. 1994) (op. on reh’g)
; see also Prystash v. State
, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (distinguishing waiver from invited error), 
cert. denied
, 529 U.S. 1102 (2000); 
Lucas
, 479 S.W.2d at 
315.  In 
Lucas
, the defendant, while testifying on his own behalf, misled the jury regarding the results of a polygraph exam he took.  
479 S.W.2d at 
315.
  The State later offered testimony from the district attorney, which rebutted the defendant’s testimony.  
Id
.  The court of criminal appeals held that “[a]lthough the results from a polygraph test are ordinarily not admissible in evidence,” on the facts of the case, the defendant “‘opened the door’ for the [S]tate to introduce the complained of testimony.”  
Id
.

Here, Appellant, in response to questions from his own attorney, voluntarily and nonresponsively testified as to the results of his polygraph test. 
 Consequently, we hold that under the facts of this case, Appellant opened the door for the State to introduce Detective LeNoir’s rebuttal testimony concerning Appellant’s polygraph examination and may not complain of or profit by such error on appeal.  
See id
.; 
Hoppes
, 725 S.W.2d at 536.
  
Accordingly, we overrule Appellant’s sole issue.

III.  CONCLUSION

Having overruled Appellant’s sole issue, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: GARDNER, J.; CAYCE, C.J.; and WALKER, J.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

[DELIVERED: MARCH 6, 2003]

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.