Opinion issued December 23, 2010. 

 

 



 

 

                        

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00753-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JASON RYAN JARNAGIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 228th District Court

 Harris County,
Texas

Trial Court Cause No. 1207049 

 

 



MEMORANDUM OPINION

A jury convicted Jason Ryan Jarnagin
of the felony offense of aggravated assault and assessed his punishment at
eight years’ confinement.  See TEX.
PENAL
CODE ANN.
§ 22.02(a)
(Vernon 2009).  On appeal, he contends that: (1) the State
failed to present legally and factually sufficient evidence that he committed
aggravated assault with a deadly weapon; (2) the trial court erred in admitting
hearsay evidence; and (3) the trial court erred in admitting expert testimony
about blood spatter evidence.  We hold
that the evidence is factually and legally sufficient, that the trial court did
not err in admitting some hearsay testimony, and that Jarnagin’s other
complaints about hearsay and expert testimony are not preserved on appeal.  We therefore affirm. 

Background

 

During an evening in May
2008, Anthony Wise, the complainant, met Adoracion (Nikki) Montgomery at Slick
Willie’s pool hall.  Both drank several
alcoholic beverages.  When the bar closed
at 2:00 a.m., Montgomery drove Wise to her apartment.  They had a few more drinks with her friends
at the apartment complex, and then the two had sexual intercourse and fell
asleep.  Wise testified that he woke up
in severe pain.  He said a man was
hitting his face several times with a long object, which appeared to be a baseball
bat.  Although his right eye was swollen
shut from the blows, Wise saw the man with the object in the doorway of the
room and another man at the foot of the bed through a slit in his left eye.  He identified Jarnagin in court as his
attacker, and said that Montgomery referred to the other man as ‘Josh.’    

According to Wise,
Montgomery screamed at the men to stop the attack and leave.  ‘Josh’ then told Wise that if he did not
leave, Jarnagin would hit him again with a baseball bat.  ‘Josh’ handed Wise his clothing, and Wise,
still bleeding from the head, left the apartment.  He went to a nearby building, where he lost
consciousness.  Later that morning, he
woke up with his head in a pool of his blood and called the police.   

          According
to his medical records, Wise had five fractures to his face including three to
his right orbital bone, and two to his nose. 
In addition, his right eye and upper-lip were very swollen, and he had
various cuts and abrasions on his face.  The
medical records state that Wise reported that a blow from a baseball bat caused
his injuries.  Wise received three to
four stitches on his nose, and he has a scar from his injury.  In addition, he states he needs to see a
specialist to repair his nose, which bothers him sometimes when he
breathes.    

          Montgomery
witnessed the attack.  She woke up and
saw her former boyfriend, Jarnagin, striking Wise in the face.  She denied that Jarnagin used a baseball bat,
and testified that he used his fists.  She
agreed that Jarnagin had brought another person with him into the bedroom, but
she did not see that person hit Wise.  Montgomery
observed that Wise’s blood was everywhere in the bedroom including on the mattress,
headboard, walls, blinds, and her person. 
Although Jarnagin and she broke up several months before the attack, the
two continued to have a sexual relationship, and Jarnagin kept a key to her
apartment.  In the early morning hours
following the attack, Montgomery left her apartment with Jarnagin and slept at
his house.   

          Later
that day, Montgomery’s friends, Emily Duron and Adam Haley, picked up
Montgomery from Jarnagin’s house and drove her back to her apartment.  According to Duron, Montgomery was exhausted,
scared and visibly upset.  She was
hysterical, excited, and spoke fast.  Over
a hearsay objection, Duron testified that Montgomery told her that, “Jason
[Jarnagin] came in and the door was unlocked. And Jason and a friend came in
and beat this guy up.”  Upon arriving at
Montgomery’s apartment, Duron observed blood everywhere in the bedroom,
including on the mattress, ceiling, and blinds. 
She persuaded Montgomery to allow Haley to call the police.  

          Deputy
T. Black interviewed Wise at the hospital and Montgomery at her apartment.  Based on his observation, Black concluded
that Wise sustained a blunt force trauma from a person striking him with a hard
object.  Wise’s injuries initially caused
him to lose much of the vision in his right eye and develop difficulty speaking,
which indicated their severity.  Wise
told Deputy Black that the attacker had used a bat.  Black concluded that Wise’s bruising was more
consistent with a bat striking him than someone’s hand.  He noted that a bat is a deadly object, and
even if the attacker used an object other than a bat, he would consider it a
deadly weapon because of the severity of Wise’s injuries.  Even hands can be deadly weapons.  Without objection, Black testified about the
blood spatter on the ceiling of Montgomery’s apartment.  He stated the ceiling spatter indicated that the
object that struck Wise collected blood while it caused his injury, and then slung
blood onto the ceiling as the object came down to strike again.  

          Deputy
Black then testified about statements that Montgomery had made to him during
his interview with her.  Defense counsel
objected on hearsay grounds, and the court sustained this objection.  In response, Black described Montgomery’s
demeanor.  She appeared traumatized.  Without another objection raised, the trial
court stated, “All right. You may proceed.” noting that Montgomery had already
testified.  Deputy Black then testified
that Montgomery told him that Jarnagin had attacked Wise, but that he had not
used an object in the attack.  Black did
not believe Montgomery’s account because she seemed to be covering for
Jarnagin.  The amount of blood and the
blood spatter led him to believe that the attacker had used an object during
the assault.  Based on his investigation,
he concluded that “an individual came in and struck [Wise] several times with
some form of club.” 

          Deputy
Dalrymple, a crime scene investigator with the Harris County Sheriff’s Office,
testified about the blood stain patterns in Montgomery’s apartment.  Deputy Dalrymple has worked for twenty-four
years as a crime scene investigator and has had several hundred hours of
education on blood stain analysis.  Specifically,
he had training focused on interpreting blood stains at the scene of a crime and
from photographs.  He has testified as an
expert in bloodstain analysis on several occasions.  

          During
Deputy Dalrymple’s testimony, the prosecutor offered a PowerPoint presentation as
a demonstrative aid to explain the bloodstain pattern analysis.  Defense counsel objected to the admission of the
presentation on two grounds: first, that the prosecutor, not the witness,
probably had produced the presentation, and, second, that the crime scene
photos were themselves the “best evidence.” 
The trial court overruled these objections.  Later, when Deputy Dalrymple discussed how bloodstain
patterns form from castoff from a weapon, defense counsel objected on hearsay grounds.
 The trial court overruled the objection.  

          Deputy
Dalrymple testified that the bloodstains in this case are more consistent with patterns
formed from a weapon than from a hand.  According
to Deputy Dalrymple, a hand produces a wider pattern of blood spatter than the
pattern on the wall of Montgomery’s apartment. 
The bloodstains on the wall and headboard are consistent with castoff
staining from a weapon because the bloodstains had a linear pattern.  The presence of castoff bloodstains on the
ceiling suggests that the attacker used an object as opposed to his hands.  He admitted that a fist could create castoff
spatters, but he would not expect them to be as high on the wall and on the
ceiling as they were in Montgomery’s apartment. 

          In
the defense case, counsel recalled Montgomery to testify regarding her son’s baseball
bag that police had examined during the investigation, in which they found a baseball
bat.  On cross examination, Montgomery
denied that she had told the initial prosecutor in the case that Jarnagin had
used a bat.  In its rebuttal case, the
State called Will Womble, the former prosecutor, as a witness.  He testified, over a hearsay objection, that
Montgomery had told him that Jarnagin attacked Wise with a bat.  

Discussion

Legal and Factual Sufficiency 

Standard of Review

In his first and second issue,
Jarnagin contends that the State failed to present legally and factually
sufficient evidence that he committed aggravated assault with a deadly
weapon.  An appellate court reviews both
legal and factual sufficiency challenges using the same standard of
review.  Brooks v. State, No. PD-0210-09, 2010 WL 3894613, at *14,
21–22 (Tex. Crim. App. Oct. 6, 2010); Ervin v. State, No.
01-10-00054-CR, 2010 WL 4619329, at *2–4 (Tex. App.—Houston [1st Dist.] Nov.
10, 2010, no pet. h.) (construing majority holding in Brooks).  Under this standard, evidence is insufficient to
support a conviction if, considering all the record evidence in the light most
favorable to the verdict, no rational fact finder could have found that each
essential element of the charged offense was proven beyond a reasonable
doubt.  See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
2789 (1979); In re Winship, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071
(1970); Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  Viewed in the
light most favorable to the verdict, the evidence is insufficient under this
standard in two circumstances:  (1) the record contains no evidence, or
merely a “modicum” of evidence, probative of an element of the offense; or (2)
the evidence conclusively establishes a reasonable doubt.  See Jackson,
443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11, 2789; Laster,
275 S.W.3d at 518; Williams, 235 S.W.3d at 750.  An appellate court presumes that the fact
finder resolved any conflicting inferences in favor of the verdict and defers
to that resolution.  See Jackson, 443 U.S. at 326, 99 S. Ct.
at 2793; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007).  An appellate court may not re-evaluate the weight and credibility
of the record evidence and thereby substitute its own judgment for that of the
fact finder.  Williams, 235 S.W.3d at 750.

Aggravated Assault

          A person
commits an aggravated assault if the person intentionally or knowingly causes bodily
injury to another, using a deadly weapon. 
Tex. Penal Code Ann.
 §§ 22.01(a)(1),
22.02(a) (Vernon 2009).  Bodily
injury is “physical pain, illness, or any impairment of physical condition.” Tex. Penal Code Ann. § 1.07(a)(8)
(Vernon 2010).  A deadly weapon is
anything “that in the manner of its use or intended use is capable of causing
death or serious bodily injury.”  Tex. Penal Code Ann. § 1.07(a)(17)(B)
(Vernon 2010).  The Penal Code defines
“serious bodily injury” as “bodily injury that creates a substantial risk of
death or that causes death, serious permanent disfigurement, or protracted loss
or impairment of the function of any bodily member or organ.”  Tex.
Penal Code Ann. § 1.07(a)(46) (Vernon 2010).  The placement of the word “capable” is
crucial to determining deadly-weapon status.  Tucker v. State, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008).  The State is not required to show that the
“use or intended use causes death or serious bodily injury,” but that the “use
or intended use is capable of causing death or serious bodily injury.” Id.  The injuries suffered can be a sufficient
basis to infer that an attacker used a deadly weapon.  Id. at 691–92;  see
Morales v. State, 633 S.W.2d 866, 868–69 (Tex. Crim. App. 1982) (photograph
of deep slash from just underneath victim’s earlobe across cheek to corner of
mouth, closed by sutures, was sufficient to show that deadly weapon was used). 

          The State alleged that
Jarnagin committed aggravated assault with a deadly weapon; namely, a bat, an
unknown object, or his hand.  The trial
court’s charge to the jury instructed the jury to return a guilty verdict based
on any of the three.  If the indictment
and charge authorize the jury to convict on more than one theory, we uphold the
guilty verdict if the evidence is sufficient on any one of the theories.  Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).   

Analysis 

Here, Wise
testified that Jarnagin struck him in the face with what appeared to be a baseball
bat.  He heard Jarnagin’s accomplice call
the object a baseball bat. According to his medical records, Wise sustained five
fractures to his face, including three to his right orbital bone, and two to
his nose.  Wise’s blood was all over the
apartment.  This evidence undermines Jarnagin’s
argument on appeal that the injuries were merely moderate and not serious.   Deputy Black testified that Wise’s injuries
and bruising were consistent with being struck by a bat or club.  Further, Deputy Dalrymple said that the
bloodstains were consistent with an attack with an object like a bat. 

Jarnagin observes that the
police never found a weapon; but the jury nevertheless concluded that the
testimony was credible that Jarnagin had used a deadly weapon despite the
absence of the weapon used.  See Gomez
v. State, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985) (holding evidence
legally sufficient to prove use of firearm without recovery of weapon based
solely on complainant’s description).  Jarnagin
also contends that only scant evidence exists that he used a deadly weapon, and
he points out that Womble, the former prosecutor in the case, re-filed the case
as aggravated assault rather than burglary of habitation, as originally filed,
only after he learned that Jarnagin had a key to the apartment.  But Wise testified that Jarnagin struck him in
the face with a bat or a similar object. Jarnagin’s accomplice described the
object that Jarnagin used to strike Wise during the attack as a bat.  Wise sustained five fractures as a result of
the attack.  Both Deputy Black and Deputy
Dalrymple testified that, based on the physical evidence, Jarnagin used a
deadly weapon in the assault.  

Moreover, even if the
testimony had been only that Jarnagin used his hands in the attack, Deputy
Black and Deputy Dalrymple testified that hands could be deadly weapons.  The physical evidence and Wise’s injuries are
consistent with the use of a deadly weapon even if it were a hand.  The fact that Womble re-filed the case with a
different criminal charge is irrelevant to a review of the evidence supporting
aggravated assault. We conclude that the jury rationally could have found that
each element of the charged offense was proven beyond a reasonable doubt.  Accordingly, we hold that the evidence was
legally and factually sufficient to support Jarnagin’s conviction for
aggravated assault.  See Brooks, 2010 WL 3894613 at *14, 21–22; Ervin,
2010 WL 4619329 at *2–4. 

Admission of Out-of-Court Statements

In his third issue,
Jarnagin maintains that the trial court erred in admitting Montgomery’s
inadmissible hearsay statements through the testimony of Emily Duron and Deputy
Black.  

Standard of Review  

The admissibility of out-of-court
statements allowed under a hearsay exception is delegated to the trial court’s sound
discretion.  Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App.
2003); Coffin v. State,
885 S.W.2d 140, 149 (Tex. Crim. App. 1994). 
An abuse of discretion occurs “when the trial judge’s decision was so
clearly wrong as to lie outside that zone within which reasonable persons might
disagree.” Cantu v. State,
842 S.W.2d 667, 682 (Tex. Crim. App. 1992). 


Statements that qualify as hearsay
are inadmissible at trial unless an applicable exclusion applies. Tex. R. Evid. 802.  An excited utterance is an exclusion from the
rule, defined as a “statement relating to a startling event or condition made
while the declarant was under the stress of excitement caused by the event or
condition.” Tex. R. Evid. 803(2);
Salazar v. State, 38
S.W.3d 141, 154 (Tex. Crim. App. 2001).  In
determining whether a hearsay statement is admissible as an excited utterance,
the court may look at the time that lapsed between the event and the statement,
as well as whether the statement was in response to a question; however,
neither of those two factors is dispositive. See Lawton, 913 S.W.2d at 553; Penry v.
State, 903 S.W.2d 715, 750–51
(Tex. Crim. App. 1995).  The critical
factor in determining whether a statement is an excited utterance is whether
the declarant was still dominated by the emotions, fear, excitement, or pain of
the event at the time of the statement.  Zuliani, 97 S.W.3d at 596.

Duron’s
Testimony  

          Duron testified that she
picked Montgomery up from Jarnagin’s house at 12:30 or 1:00 in the afternoon
following the early morning assault of Wise. 
According to Duron, Montgomery was exhausted, scared, and visibly
upset.  She was hysterical, excited and talking
fast.  Over a hearsay objection, Duron
testified that Montgomery told her that, “Jason [Jarnagin] came in and the door
was unlocked. And Jason and a friend came in and beat this guy up.” 

          Although the conversation
occurred hours after the assault, the record establishes that Montgomery was
upset and nervous when she spoke with Duron. Given her shaken and excited
demeanor, reasonable people could disagree about whether Montgomery was dominated
by the emotions of witnessing the assault. See id. at 595–96; Cantu, 842 S.W.2d at 682.  We hold that the trial court did
not abuse its discretion by allowing Duron to testify to the statement as an
excited utterance. See Tex. R.
Evid. 803(2).  Even if the trial
court had erred in allowing this statement, the error would be harmless because
Duron’s testimony about Montgomery’s statement was cumulative of Montgomery’s earlier
testimony at trial, and therefore could not have harmed Jarnagin. See King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (holding that, even if
evidence was inadmissible hearsay, its admission could not have a substantial
or injurious influence on the jury’s decision because there was enough properly
admitted evidence to support the verdict). 

Deputy Black’s Testimony

Jarnagin also contends that Deputy Black
made inadmissible hearsay statements about what Montgomery said to him. The
relevant testimony is as follows:   

         PROSECUTOR:  All right. Now, Deputy Black, you met Ms.                  Montgomery
at the apartment; is that correct?

                   

         DEPUTY
BLACK:  Yes, sir. 

                   

         PROSECUTOR:  Did she describe a similar scene as Mr. Wise?


                   

         DEPUTY
BLACK:  Yes, sir.  She - - she stated that they       were both
- - 

                   

         DEFENSE
COUNSEL:  Objection, Your Honor, hearsay.


                   

         THE
COURT:  Sustained. 

                   

         PROSECUTOR:  Did she appear to be shaken or excited      by a            recent
event? 

                   

         DEPUTY
BLACK:  She was - - I believe she even
said          she              was - - traumatized is the word she used. 

                   

         THE
COURT:  Who are you referring to? 

                   

         DEPUTY
BLACK:  Ms. Montgomery. 

                   

         THE
COURT:  All right. You may proceed. She’s
       testified. 

 

Deputy Black then testified
that Montgomery told him Jarnagin attacked Wise, but used only his hands and
not an object.  Deputy Black said he did
not believe her because she seemed to be covering for Jarnagin, and the amount
of blood and the blood spatter led him to believe the attacker used an object
during the assault. 

It is unnecessary to decide whether Deputy Black’s testimony is
inadmissible hearsay because Jarnagin did not preserve error.  Texas Rule of Appellate Procedure 33 requires that the record
demonstrate that (1) the complaining party made a timely and specific request,
objection, or motion, and (2) the trial judge either ruled on the request,
objection, or motion, or he refused to rule and the complaining party objected
to that refusal. TEX. R. APP. P. 33.1(a); Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim.
App. 2003).
 An objection must be timely, specific,
pursued to an adverse ruling, and must be made each time inadmissible
evidence is offered.  Geuder, 115 S.W.3d at 13; Martinez v. State, 98 S.W.3d 189, 193 (Tex.
Crim. App. 2003).  Two exceptions apply to
the requirement of subsequent objections: counsel may obtain a running
objection or request a hearing outside the presence of the jury.  Martinez,
98 S.W.3d at 193.  

          Here, Jarnagin did not pursue his objection when Deputy
Black later testified that Montgomery had told him Jarnagin assaulted Wise.  See Geuder, 115 S.W.3d at 13 (an objection must
be made each time inadmissible evidence is offered).  Because preservation is a prerequisite to
presenting a complaint for appellate review, Jarnagin failed to preserve his
complaint about this testimony. See Tex. R. App. P. 33.1(a).  Even if Jarnagin had
preserved error, any error would be harmless because the testimony about
Montgomery’s statement was consistent with Montgomery’s own testimony at trial.
 See
King, 953 S.W.2d at 271.

Expert
Testimony 

 

          In his last issue,
Jarnagin contends that the State failed to show that Deputy Dalrymple’s expert
testimony was reliable.  See Tex.
R. Evid. 702. We review the admission of expert opinion testimony using an
abuse-of-discretion standard of review.  Weatherred v. State, 15 S.W.3d 540, 542
(Tex. Crim. App. 2000) (citing Prystash v. State, 3 S.W.3d 522, 527 (Tex.  Crim. App. 1999)).  To preserve error based on admission of
evidence, an objection must state the specific ground for the objection unless
that ground is apparent from the context. Tex.
R. Evid. 103(a); Tex. R. App.
P. 33.1; see Hernandez v. State, 53 S.W.3d 742, 745
(Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). 

          Here, Jarnagin did not
object to Deputy Dalrymple’s opinion on the ground that it was unreliable.  Instead, he argued in the trial court that
the prosecutor had probably produced the PowerPoint and that it failed to
comport with the “best evidence” rule. When Deputy Dalrymple testified
regarding bloodstain patterns resulting from castoff from a weapon, counsel
objected on the ground that the testimony was hearsay.  When counsel twice objected that Dalrymple
was not qualified to testify about a medical diagnosis, the trial court sustained
his objection.  Counsel twice stated that
he would not oppose Dalrymple’s testifying about his opinion based on the
photographs.  Jarnagin did not question the
scientific reliability of the evidence in the trial court.  Because Jarnagin’s trial objections do not
comport with the issue he raises on appeal, we hold
that Jarnagin failed to preserve this issue for appeal. See Tex. R. App. P. 33.1(a);
Swain v. State, 181 S.W. 3d 359, 365
(Tex. Crim. App. 2005).  

 

 

 

 

 

 

 

 

 

 

 

Conclusion

          We
hold that the evidence is factually and legally sufficient to support the
conviction.  We further hold that the
trial court did not err in admitting hearsay evidence during Duron’s
testimony.  Jarnagin did not challenge
Deputy Black’s hearsay testimony or the reliability of Deputy Dalrymple’s
expert opinions in the trial court.  Thus,
we conclude he waived those arguments. 
We therefore affirm the judgment of the trial court. 

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Keyes,
Higley, and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).