

# NUMBER 13-23-00386-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JUAN JESUS NORIEGA,                                                           Appellant,

v.

THE STATE OF TEXAS,                                                           Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 7
## OF HIDALGO COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and Cron**
**Memorandum Opinion by Justice Cron**

Appellant Juan Jesus Noriega was found guilty by a jury for committing the offense of harassment, a Class B misdemeanor. *See* TEX. PENAL CODE ANN. § 42.07. The trial court assessed his punishment at ninety days confinement in jail. However, the trial court suspended the sentence and placed appellant on community supervision for a period of

one year. By three issues, appellant argues (1) the harassment statute is unconstitutional as applied to him, (2) the evidence supporting his conviction is insufficient, and (3) the trial court reversibly erred when it published unadmitted evidence to the jury. Although it did not appeal the sentence, the State argues in its brief that Noriega was ineligible for community supervision, and we should modify the judgment by striking the suspension of Noriega's sentence. We affirm.

## I.    BACKGROUND

Trial commenced on August 23, 2023. At trial, Deputy Adrian Vargas of the Hidalgo County Sheriff's Office testified that he was dispatched to a residence in Weslaco, TX on November 18, 2022, in reference to a terroristic threat. Upon arrival, Deputy Vargas contacted Jacquelin Nayeli Noriega, who lived next-door to appellant, her uncle. Deputy Vargas learned that Jacqueline had seen a video that appellant had posted to his Facebook page, in which appellant stated, among other things, that he wanted to murder Jacqueline. According to Deputy Vargas, Jacqueline appeared alarmed, frightened, and concerned for her safety. Deputy Vargas also saw the video, which was admitted into evidence, and testified to the following:

> I observed a man who appeared to be . . . 40, 50 years [in] age. He was wearing black glasses, he was looking into the camera. I observed him to be in what appeared to be the kitchen area of the home. He was rambling on about the government spying on him. He was saying that the Hidalgo County Sheriff's Office and Herbal Life [are] spying on him and . . . controlling him. He says that . . . Jacquelin[e] . . . is controlling him through his phone, doing witchcraft on him, and that—he states, I want to press charges or I want to murder this girl for what she's doing.

In the video, appellant stated, among other things, that Jacqueline was an "unfit mother" and that "the neighbors" told him that Jacqueline was "not even attending to the

2

baby" and "doing a lot of voodoo and witchcraft." Appellant also stated, "I've been feeling a lot of itching . . . inside my head and they said she did some stuff to my head," "I want to press some charges," and "I want to murder this girl for what she is doing." Deputy Vargas testified that he did not contact appellant because he did not want to escalate the situation but referred the matter to "investigations." Deputy Vargas noted that though he initially reported appellant's conduct as a terroristic threat, "the investigators changed the offense to harassment."

At the time of trial, Jacqueline was twenty-one years old and testified that on the day she saw appellant's video, she was home alone with her two-month-old child. She testified that she had seen the video on appellant's Facebook page utilizing a "fake profile" because she did not want appellant to know she was looking at it or "for him to start saying other things because I was watching it." Jacqueline indicated that appellant's Facebook page was public and anyone could see it. She further explained that she viewed appellant's Facebook page because he had previously posted videos by which he spread false information about her family or encouraged others to harm her.

Jacqueline testified that she had viewed the video eight hours after appellant had posted it. According to Jacqueline, appellant appeared frustrated, angry, and upset in the video and stated that Jacqueline knew how to "shapeshift" his face with witchcraft and that she and her family "do those things." Jacqueline stated that she felt alarmed, threatened, terrified, and embarrassed after seeing the video. Though she admitted that appellant had not sent her the video, Jacqueline stated that she felt the video was directed towards her because appellant mentioned her name and talked as if she was watching.

3

Jacqueline admitted that appellant made no attempt to call her or ring her doorbell the day he posted the video, or any time after. However, Jacqueline believed she received a credible threat by appellant in the video and stated she moved to Corpus Christi about a month after seeing the video.

After the parties provided closing statements, the jury found appellant guilty of harassment. During the punishment phase, outside the presence of the jury, appellant informed the trial court that he deliberately declined to file an "application for probation." The trial court asked the State whether it would object to an instruction regarding community supervision in the charge on punishment, and the State responded, "We would waive any objection, Judge, and we would ask that the [community supervision] instruction be included in the . . . jury charge." The trial court then asked the parties if they had reviewed the charge on punishment, and the parties confirmed. The parties made no further objections or requests regarding the trial court's charge on punishment, which included an instruction regarding community supervision. In addition, the jury verdict form included an option for community supervision for the jury to consider.

During closing statements, the State argued for the jury to recommend appellant be placed on community supervision, and appellant argued for the jury to assess a short jail sentence. The jury assessed appellant a ninety-day jail sentence but recommended that the sentence be suspended, and that appellant be placed on community supervision. The trial court followed the jury's recommendation. The trial court's judgment reflects that appellant was sentenced to ninety days in county jail, that the sentence was suspended, and that appellant was placed on community supervision for one year. This appeal

4

ensued.

## II. AS-APPLIED CONSTITUTIONAL CHALLENGE

In his first issue, appellant argues that the harassment statute, TEX. PENAL CODE ANN. § 42.07, is unconstitutional as applied to him.

A party may challenge a statute's constitutionality on its face or as applied to that party. "[I]n an as-applied challenge, the claimant . . . asserts that the statute is unconstitutional as applied to his particular facts and circumstances." *Estes v. State*, 546 S.W.3d 691, 698 (Tex. Crim. App. 2018) (quoting *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011)). The State asserts that appellant failed to preserve his as-applied constitutional challenge.

To preserve a complaint for our review, a party must first present "to the trial court a timely request, objection, or motion" stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Further, the trial court must have "ruled on the request, objection, or motion, either expressly or implicitly; or . . . the complaining party [must have] objected to the [trial court's] refusal" to rule. *Id.* at § 33.1(a)(2). "[A] challenge to the constitutionality of a statute is a forfeitable right and must be preserved in the trial court during or after trial." *Cooper v. State*, 673 S.W.3d 724, 749 (Tex. App.—Fort Worth 2023, no pet.); *see Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). Both facial and as-applied challenges must be raised in the trial court to preserve error. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014); s*ee Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008) (noting the "well-established requirement that appellant must preserve an 'as applied' constitutional challenge by raising

5

it at trial"). A constitutional objection must also alert the trial court to the constitutional bases for the objection, allowing the trial court to make a reasoned ruling. *See Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012).

Here, appellant did not present his as-applied challenge to the constitutionality of § 42.07 to the trial court. Therefore, he has not preserved this issue for review, and it is overruled. *See* TEX. R. APP. P. 33.1; *Reynolds*, 423 S.W.3d 377; *Clark*, 365 S.W.3d at 340.

### III.     LEGAL SUFFICIENCY

In his second issue, appellant argues that the evidence supporting his conviction was insufficient.

### A.     Standard of Review & Applicable Law

In determining the sufficiency of the evidence to support a criminal conviction, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the State has proven the essential elements of the crime beyond a reasonable doubt. *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (plurality op.).

We review the sufficiency of the evidence by a hypothetically correct jury charge as authorized by the charging instrument. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). As authorized by information, the State was required to prove that appellant, with intent to harass, annoy, alarm, abuse, torment, or embarrass the person receiving the threat, threatened, in a manner reasonably likely to alarm the person receiving the

6

threat, to commit a felony against the person. TEX. PENAL CODE ANN. § 42.07(a)(2). Murder is a felony offense. *See id*. § 19.02(c), (d).

"As a reviewing court, we may not reevaluate the weight and credibility of the evidence in the record and thereby substitute our own judgment for that of the factfinder." *Braughton*, 569 S.W.3d at 608; *Brooks*, 323 S.W.3d at 899 (providing that a reviewing court must not sit as "thirteenth juror," disagree with the jury's "weighing of the evidence," or "disagree with a jury's resolution of conflicting evidence"). "We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution." *Braughton*, 569 S.W.3d at 608; *Brooks*, 323 S.W.3d at 922. "Although the parties may disagree about the logical inferences that flow from undisputed facts, where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006) (cleaned up).

## B. Discussion

The evidence demonstrated that appellant posted a video on Facebook in which he stated, among other things, that he wanted to murder Jacqueline. Thus, the evidence established that appellant threatened to commit a felony against Jacqueline—murder. *See* TEX. PENAL CODE ANN. §§ 19.02(c), (d); 42.07(a)(2).

However, appellant asserts that the State produced no evidence that he "initiated communication with [Jacqueline] or that [Jacqueline] ever received the threat from [appellant]," arguing, among other things, that the video was not sent to Jacqueline. Without citation to authorities, appellant seems to impliedly argue that § 42.07(a)(2)

7

requires the State to prove Jacqueline received a threat directly from appellant. By its own terms, § 42.07(a)(2) does not require that a threat to commit a felony against a person be performed in any specific manner. *See id.* Instead, the statute requires the threat be done "in a manner reasonably likely to alarm the person receiving the threat." *Id.*

At trial, Jacqueline admitted that appellant did not send her the video and that she utilized a "fake profile" to visit appellant's Facebook page to view the video. However, Jacqueline's testimony also indicated that appellant's Facebook page was publicly accessible and could be seen by anyone. In addition, Jacqueline also testified that she felt alarmed, threatened, terrified, and embarrassed after viewing the video. From this evidence, the jury could have reasonably concluded that appellant threatened to murder Jacqueline in a manner reasonably likely to alarm her. *See id.* Furthermore, the jury could have reasonably inferred that appellant made the threat "with intent to harass, annoy, alarm, abuse, torment, or embarrass" from his own words, actions, and conduct. *See* TEX. PENAL CODE ANN. § 42.07(a)(2); *Blount v. State*, 961 S.W.2d 282, 284 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) ("The intent of the accused may be inferred from circumstantial evidence. . . . That is, the defendant's intent may be determined from his words, actions, and conduct.")

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to establish the essential elements of the offense of harassment beyond a reasonable doubt. *See Baltimore*, 689 S.W.3d at 341; TEX. PENAL CODE Ann. § 42.07(a)(2). We overrule appellant's second issue.

## IV.    PUBLICATION OF UNADMITTED EVIDENCE

In his third issue, appellant argues that the trial court reversibly erred when it published unadmitted evidence to the jury during the punishment phase of his trial.

Jacqueline testified during the punishment phase that appellant had previously posted other harassing videos to Facebook about her. The State asked Jacqueline questions relating to the authentication of the referred-to videos, which were kept on an electronic storage device. However, the State did not request that the videos be admitted as evidence. Instead, the State asked the trail court if it could show the jury the videos on a laptop. The trial court responded, "You can publish. [Defense counsel], if you want to reposition yourself so you can look at the laptop." Defense counsel did not object to the State's request to publish the videos. The State then continued to ask Jacqueline questions about the videos and played them for the jury.[1] On cross-examination, defense counsel asked Jacqueline questions relating to the content of the videos, among other things.

Appellant argues that the publication of these videos was error, and that he suffered harm as a result. However, the State responds that appellant failed to preserve this issue for appellate review. We agree. The record demonstrates that appellant failed to object at any point after the State requested to show the videos to the jury on a laptop. *See* TEX. R. APP. P. 33.1(a)(1). Consequently, appellant has failed to preserve this issue for our review. We overrule appellant's third issue.

---

[1] We note that the complained-of videos are not included within the appellate record.

## V. GRANT OF COMMUNITY SUPERVISION

In a cross-issue, the State argues for the first time on appeal that the trial court erred in "submitting a [community supervision] question to the jury." Specifically, the State argues that appellant did not file the sworn pretrial motion required for jury-recommended community supervision and that there was no evidence establishing that appellant had not been previously convicted of a felony. *See* TEX. CODE CRIM. PROC. ANN. art. § 42A.055(a), (b)(1)–(2); *see also Pemberton v. State*, No. 13-18-00029-CR, 2019 WL 5609700, *3 (Tex. App.—Corpus Christi–Edinburg, Oct. 31, 2019 no pet.) (mem. op., not designated for publication) ("To be eligible for community supervision, a defendant's sworn application for community supervision *and* the evidence must show that he has never been convicted of a felony" (citations omitted)). The State suggests that the portion of the trial court's judgment placing appellant on community supervision is void and should be set aside.

Appellate review of purported error in a jury charge involves a two-step process. *Kirch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether the jury instruction is erroneous. *Id.* If there is no error, our analysis ends. *Id.* If error occurred, an appellate court must then analyze that error for harm. *Id.* However, the law of invited error provides that a party cannot take advantage of an error that it invited or caused, even if such error is fundamental." *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011) (citing *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999)). "In other words, a party is estopped from seeking appellate relief based on error that it induced." *Id.* "To hold otherwise would be to permit him to take advantage of his own

wrong." *Id.* Furthermore, this doctrine has been applied to the improper submission of jury charges at the punishment stage of a capital murder case. *See Prystash*, 3 S.W.3d at 531–32.

Here, the State not only affirmatively waived any objections to the inclusion of community supervision instructions within the punishment charge, but it affirmatively requested such instructions when it told the trial court "we would ask that the [community supervision] instruction be included in the . . . jury charge." We will not permit the State to complain of the trial court's inclusion of instructions regarding community supervision that the State itself requested.[2] *See Woodall*, 336 S.W.3d at 644. Accordingly, we hold the rule of invited error applies here to preclude our review of the State's cross-issue. *See id.; Prystash*, 3 S.W.3d at 531.

To the extent the State's cross-issue can be construed as a complaint regarding an illegal sentence, the Texas Court of Criminal appeals has unequivocally held that a trial court's order granting community supervision, even to a statutorily ineligible defendant, is not a "sentence" and therefore cannot be an illegal or void sentence. *Ex parte Williams*, 65 S.W.3d at 657–58 (Tex. Crim. App. 2001). Consequently, because the trial court's grant of community supervision in this case is not a "sentence," we have no jurisdiction over the State's cross-issue pursuant to Article 44.01(b), which permits the State to appeal "a sentence in a case on the ground that the sentence is illegal." *See* TEX. CRIM. CODE PROC. ANN. art. 44.01(b); *State v. Ramirez*, 62 S.W.3d 356, 358 (Tex. App.—

---

[2] We note that appellant does not raise any issue regarding jury charge error in its brief. Appellant also did not file a reply brief, and therefore did not respond to the State's cross-issue.

Corpus Christi-Edinburg 2001, no pet.) (following *Williams* to hold that, because probation is not an illegal or void sentence, appellate court lacked jurisdiction to hear State's appeal of shock probation order); *State v. Enriquez*, 47 S.W.3d 177, 179 (Tex. App.—El Paso 2001, no pet.) (following *Williams* to hold that, because community supervision is not an illegal or void sentence, State cannot complain for the first time on appeal that community supervision was unauthorized). The State's cross-issue is overruled.

## VI.    CONCLUSION

We affirm the trial court's judgment.

JENNY CRON
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
6th day of February, 2025.